UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |
|---|---|
| ROBERT S. MARTIN, AS A TRUSTEE OF (i) THE MARTIN 2008-A INVESTMENT TRUST, (ii) AS A TRUSTEE OF THE MARTIN 2013-A INVESTMENT TRUST, (iii) AS A TRUSTEE OF THE RPM 2005 FAMILY TRUST, and (iv) AS A TRUSTEE OF THE RSM 1988 TRUST, <br><br> Plaintiff, <br><br> v. <br><br> ERIC BISCHOFF, <br><br> Defendant. | Case No. |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Robert S. Martin ("Plaintiff"), as a Trustee of the Martin 2008-A

Investment Trust (the "Martin 2008 Trust"), as a Trustee of the Martin 2013-A

Investment Trust (the "Martin 2013 Trust"), as a Trustee of the RPM 2005 Family

Trust, and as a Trustee of the RSM 1988 Trust, by counsel and pursuant to Federal

Rule of Civil Procedure 57, brings this action for declaratory relief against Defendant,

Eric Bischoff ("Bischoff"), and requests a speedy hearing of this action. In support

thereof, Plaintiff alleges as follows:

**NATURE OF THE ACTION**

This is an action for declaratory judgment brought by reason of wrongful threats

and attempts by Bischoff to:  (i) challenge certain long-consummated transfers of shares in Boar's Head Provisions Co., Inc. ("Boar's Head") to the RPM 2005 Family Trust (of which Plaintiff is a Trustee); and (ii) appropriate those shares for himself.

On or about October 4, 2019, in Sarasota County, Bischoff initiated an arbitration proceeding against Plaintiff by serving a Notice of Arbitration and Statement of Claim (the "Notice of Arbitration").  In the Notice of Arbitration, Bischoff incorrectly alleged that Plaintiff breached a certain 1991 Boar's Head Shareholder's Agreement and Irrevocable Trust (the "Shareholder's Agreement") by transferring (between 2011 and 2016) 15.05% of the shares of Boar's Head's to the RPM 2005 Family Trust, which Bischoff contends to be an "unauthorized recipient."

The Notice of Arbitration was withdrawn, without prejudice, in 2020, pursuant to an agreement among the parties to, *inter alia*, toll the statute of limitations, but that tolling agreement has now expired, and Bischoff has not retracted, and continues to advance, his threat of renewed litigation seeking to challenge the share transfers to the RPM 2005 Family Trust. Bischoff expressly agreed, in the tolling agreement, that this declaratory judgment action may be filed upon expiration of the tolling agreement. Bischoff's threats and conduct have created needless uncertainty concerning ownership interests in Boar's Head and have impaired the ability of Plaintiff and his son, Robert P. Martin, the beneficiary of the RPM 2005 Family Trust, to, *inter alia*, manage their personal affairs.

To eliminate this uncertainty regarding the ownership of the Boar's Head shares and put an end to Bischoff's wrongful demands and persistent threats of legal action,

Plaintiff seeks an adjudication of the rights of the parties in respect of the aforesaid transfers of Boar's Head shares and a declaration that the transfers to the RPM 2005 Family Trust were and are valid and that Bischoff has no legal or equitable basis to challenge those transfers or appropriate the shares for himself.

## JURISDICTION, PARTIES, AND VENUE

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, for the purpose of determining the rights of the parties in connection with an actual dispute and controversy concerning the Shareholder's Agreement and the validity of stock transfers made between 2011 and 2016 in accordance therewith.

2.      Bischoff is a citizen of New York who resides at 1133 Park Avenue, Apartment 16E, New York, NY 10128. Bischoff is an owner of Boar's Head shares and a party to the Shareholder's Agreement.

3.      Bischoff has purposefully established contacts within this district by, among other things, demanding arbitration against Plaintiff in Sarasota County, Florida.  In doing so, Bischoff availed himself of the privilege of conducting activities in this district and has sought affirmative relief against Plaintiff in this district (where Boar's Head maintains its principal place of business).  Additionally, Bischoff is a shareholder of Boar's Head, and has continuously travelled to this district and communicated with individuals in this district in his capacity as a shareholder of Boar's Head.  Additionally, between February 27, 2020, and April 30, 2021, Bischoff was employed by Frank Brunckhorst Co., LLC, the national distributor for the Boar's Head brand of products, which is also headquartered in this district.

4.      Plaintiff, who serves as a trustee of the Martin 2008 Trust, the Martin 2013 Trust, the RPM 2005 Family Trust, and the RSM 1988 Trust, is a citizen of Florida who resides in Sarasota County, Florida.

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because Plaintiff and Bischoff are citizens of different states and the amount in controversy exceeds $75,000, excluding attorneys' fees, interest, and costs.

6.      Pursuant to 28 U.S.C. § 1391, venue is proper in this district because the events giving rise to the claims occurred in this district.

7.      All conditions precedent to the filing of this lawsuit have been performed, have occurred, or have been waived.

## GENERAL ALLEGATIONS

**A.      Background Facts and the Boar's Head Shareholder's Agreement**

8.      Boar's Head was founded as a family-owned and operated business, and the Shareholder's Agreement was executed for the purpose of preserving Boar's Head's status as a family-owned and operated business for years to come.

9.      The Shareholder's Agreement provides that the Boar's Head shareholders "desire to maintain ownership and control of the Corporation among themselves for the purpose of insuring continuity of management among themselves . . . ." *See* Shareholder's Agreement, p. 2.

10.     The Shareholder's Agreement addresses and governs, among other things, the transfer of Boar's Head shares by and between shareholders.

11.     The Shareholder's Agreement divides Boar's Head shareholders into two groups: (1) the Brunckhorst family Shareholders (Group A); and (2) the Bischoff family Shareholders (Group B).  *See* Shareholder's Agreement, ¶3(b).

12.     The persons or entities to which Group B Boar's Head shares may be transferred are described in Section 3(b) of the Shareholder's Agreement as follows:

> a. any other Group B Shareholder;
>
> b. any other member of Alvina Martin's immediate family who is an Active Employee in the business;
>
> c. a trust for the benefit of such Group B Shareholder or other permitted transferee; or
>
> d. a beneficiary of the Alvina Martin 1988 Trust to whom Shares may be transferred under the terms of the Trust Agreement creating such Trust as in effect on the date of the Shareholder's Agreement.

*See* Shareholder's Agreement, ¶3(b).

13.     Alvina Martin, as referenced in Section 3(b) of the Shareholder's Agreement, was the daughter of Boar's Head co-founder Bruno Bischoff and the mother of Plaintiff Robert S. Martin – a Group B shareholder.

14.     Defendant Eric Bischoff is a nephew of Alvina Martin and a Group B shareholder.

15.     Robert P. Martin ("RPM"), is the son of Plaintiff, a grandson of Alvina Martin, a great grandson of Bruno Bischoff, the beneficiary of the RPM 2005 Family Trust, and a beneficiary of the Alvina Martin 1988 Trust.

16.     In his October 4, 2019 Notice of Arbitration, Bischoff alleged – for the first time – that three transfers of Boar's Head shares made by Plaintiff between 2011 and 2016 to the RPM 2005 Family Trust for the benefit of his son, RPM, were improper under the Shareholder's Agreement.  The challenged transfers were alleged as follows:

    a.  2011: "0.05% of Boar's Head equity" from the "RSM 2008 Trust . . . to the RPM 2005 Trust."

    b.  2013: "an additional 10% of Boar's Head equity" from the "RSM 2008 Trust . . . to the RPM 2005 Trust."

    c.  2016: "an additional 5% of Boar's Head equity" from the "RSM 2013 Trust  . . . to the RPM 2005 Trust."

17.     Bischoff belatedly and incorrectly objected to all three transfers by asserting that:

    a.  the "RPM 2005 Trust" was not a Group B Shareholder prior to the first allegedly improper transfer in 2011;

    b.  RPM, a grandson of Alvina Martin, was not a member of Alvina's "immediate family"; and

    c.  the "RPM 2005 Trust" was therefore not a trust for the benefit of an existing Group B Shareholder or other permitted transferee.

18.     In his 2019 Notice of Arbitration, Bischoff ignored the fourth category of persons or entities to whom shares of Boar's Head could properly be transferred – namely, a beneficiary of the Alvina Martin 1988 Trust.

19.     Based upon these untimely allegations and objections, Bischoff demands that he be afforded the right to buy out all the shares owned by the RPM 2005 Family Trust (representing 15.05% of Boar's Head equity) at nominal ("book value") cost pursuant to Sections 3(a) and 4 of the Shareholder's Agreement.

**B.     Unclean Hands and Laches**

20.     Bischoff's efforts to invalidate the transfers to the RPM 2005 Family Trust and appropriate for himself 15.05% of the shares of Boar's Head to which he possesses no legal entitlement is contrary to law, equity, and good conscience.

21.     Bischoff was well aware of the 2011, 2013 and 2016 transfers to the RPM 2005 Family Trust when or shortly after they occurred, but did not challenge, object to, raise any issue, make any demands, or assert any claims concerning those transfers until he served his Notice of Arbitration in October 2019.

22.     In fact, upon learning of the initial transfer of shares to the RPM 2005 Family Trust in the fall of 2011, Bischoff congratulated RPM on becoming a Boar's Head shareholder.

23.     In stark contrast to the permissible transfer of shares in 2011, 2013 and 2016 to the RPM 2005 Family Trust, Bischoff (in 2012) attempted improperly to transfer certain of his shares to his daughters (who, unlike RPM, were not "Active Employees" in the business and were therefore ineligible to own those shares). Plaintiff and the other Boar's Head shareholders, including the RPM 2005 Family Trust, did not seek to buy out Bischoff's shares or demand that he surrender those shares by reason of his willful breach of the Shareholder's Agreement, but instead allowed

Bischoff to retain his shares.  In a 2013 agreement documenting this resolution, Bischoff again acknowledged what he had previously acknowledged in 2011 – to wit: that RPM, through the RPM 2005 Family Trust, was a Boar's Head Group B shareholder.

## DECLARATORY JUDGMENT

24.     Plaintiff realleges and incorporates by reference paragraphs 1 through 23 as if set forth verbatim herein.

25.     Plaintiff seeks a declaratory judgment that the transfers of Boar's Head shares to the RPM 2005 Family Trust were valid and proper under the terms of the Shareholder's Agreement and that Bischoff has no legal or equitable right to appropriate those shares for the benefit of himself or his designees.

26.     Under Section 3(b) of the Shareholder's Agreement, Group B shareholders are permitted to transfer Boar's Head shares to any or all of the following transferees:

> a. *any other Group B Shareholder*;
>
> b. *any other member of Alvina Martin's immediate family* who is an Active Employee in the business;
>
> c. *a trust for the benefit of such Group B Shareholder or such permitted transferee*; or
>
> d. *a beneficiary of the Alvina Martin 1988 Trust* to whom Shares are permitted to be transferred under the terms of the Trust Agreement

creating such Trust as in effect on the date of the Shareholder's Agreement.

Shareholder's Agreement, ¶3(b) (emphases added).

27.     On September 14, 2011, the then-serving co-trustees of the Martin 2008 Trust, including Plaintiff, transferred shares of Boar's Head stock equal to 0.05% of the total number of outstanding shares of the company to the RPM 2005 Family Trust (the "2011 Transfer").

28.     On December 31, 2013, the then-serving co-trustees of the Martin 2008 Trust, including Plaintiff, transferred shares of Boar's Head stock equal to 10% of the total number of outstanding shares of the company to the RPM 2005 Family Trust (the "2013 Transfer").

29.     On April 5, 2016, the then-serving co-trustees of the Martin 2013 Trust, including Plaintiff, transferred shares of Boar's Head stock equal to 5% of the total number of outstanding shares of the company to the RPM 2005 Family Trust (the "2016 Transfer").

30.     RPM is Plaintiff's son, a grandchild of Alvina Martin and a great-grandchild of Bruno Bischoff.

31.     Since at least 2007, RPM has been an Active Employee of the Boar's Head business and remains so to this day.

32.     RPM is the beneficiary of the RPM 2005 Family Trust.

33.     The 2011, 2013 and 2016 Transfers to the RPM 2005 Family Trust were permissible transfers in accordance with the terms of the Shareholder's Agreement.

34.     RPM, and any trusts for his benefit (including, but not limited to, the RPM 2005 Family Trust), were permitted transferees of the shares because:  (1) RPM was an immediate family member of Alvina Martin and an Active Employee of the business; (2) RPM was a beneficiary of the Alvina Martin 1988 Trust; and (3) the 2013 and 2016 Transfers went from one Group B shareholder to another Group B shareholder.

35.     Apart from, and in addition to the foregoing:  (1) Bischoff acquiesced to, waived, released and/or is otherwise estopped from asserting any right to challenge the transfers or seize for himself the shares at issue; (2) the relief Bischoff seeks would be unconscionable and contrary to law and equity; and (3) Bischoff is barred by the doctrines of laches and "unclean hands" from challenging the transfers or obtaining any interest in those shares.

36.     First, the term "immediate family," as used in Paragraph 3(b) of the Shareholder's Agreement, includes the grandchildren (including RPM) and more remote descendants of Alvina Martin.  The term "immediate family" must be construed to include Alvina Martin's grandchildren  because, among other things, any interpretation precluding the transfer of shares to Alvina Martin's grandchildren would defeat the very purpose and intent of the Shareholder's Agreement, which was to preserve continuity of ownership, control and management of Boar's Head within the families of the founders.

37.     Consistent with this intent, the parties understood that grandchildren were to be included within the definition of "immediate family" because, by reason of

the inevitable passage of time, grandchildren would eventually be the only remaining family members.  To keep both ownership and management of the company within the families, the shareholders agreed that grandchildren who were active employees would be included within the definition of "immediate family" and thus permitted to receive shares. A contrary finding would defeat the primary purpose of the Shareholder's Agreement.

38.     Consistent with this intent, the Shareholder's Agreement, in paragraph 15, made clear that "immediate family" included grandchildren and great grandchildren to whom shares could be transferred under certain circumstances, expressly acknowledging that grandchildren and great grandchildren who were or became actively employed in the business would be eligible to receive shares.

39.     Accordingly, because RPM was an immediate family member of Alvina Martin who was (and remains) an active employee of the business, the 2011, 2013 and 2016 Transfers to the RPM 2005 Family Trust were permissible transfers under the terms of the Shareholder's Agreement.

40.     Second, RPM, as a descendant of Plaintiff, is a beneficiary of the Alvina Martin 1988 Trust under the terms of the Alvina Martin 1988 Trust Agreement in effect on the date of the Shareholder's Agreement, and thus was a permissible transferee of Boar's Head shares.

41.     Accordingly, because RPM was a beneficiary of the Alvina Martin 1988 Trust to whom shares of Boar's Head stock could be transferred, the 2011, 2013 and

2016 Transfers to the RPM 2005 Family Trust were permissible transfers under the terms of the Shareholder's Agreement.

42.     Third, the RPM 2005 Family Trust became a Group B shareholder following the 2011 Transfer and, pursuant to the Shareholder's Agreement, was permitted to receive subsequent transfers of Boar's Head shares.

43.     The Boar's Head Shareholder's Agreement provides that it "shall be governed by, construed and enforced in accordance with, the laws of the State of New York without giving effect to conflict of law principles." Shareholders Agreement, ¶ 18.

44.     The statute of limitations applicable to claims based on a written contract is six years under New York law. *See* NY CPLR § 213.

45.     A claim for breach of contract accrues at the time of the alleged breach.

46.     The 2011 Transfer – the initial transfer of shares to the RPM 2005 Family Trust – occurred on September 14, 2011 and, for the reasons discussed above, was valid at its inception.

47.     Bischoff was aware of the 2011 Transfer when or shortly after it occurred and acknowledged and welcomed RPM as a new shareholder.

48.     But even if the 2011 Transfer was somehow inconsistent with the Shareholder's Agreement (which plainly it was not), any claim by Bischoff for breach of contract arising from that transfer would have accrued on September 14, 2011.

49.     Under New York's six-year statute of limitations, any challenge by Bischoff to that transfer is time-barred after September 14, 2017.

50.     Bischoff did not assert any claim or cause of action based on the 2011 Transfer until he served his Notice of Arbitration on October 9, 2019, more than two years after the limitations period had expired.  Accordingly, his claim for breach of the Shareholder's Agreement arising from the 2011 Transfer, in addition to being without merit, is time-barred and he is estopped from asserting any claim to the shares.

51.     The RPM 2005 Family Trust, as a trust created for the benefit of RPM, became a "Group B Shareholder" on September 14, 2011 under the terms of Shareholder's Agreement.

52.     The Shareholder's Agreement permits a Group B Shareholder to transfer shares of Boar's Head to any other Group B Shareholder.  Shareholder's Agreement, ¶ 3(b)(ii).

53.     When the 2013 and 2016 Transfers were made, the RPM 2005 Family Trust was already a Group B shareholder by virtue of having acquired shares pursuant to the 2011 Transfer.

54.     Therefore, the 2013 and 2016 Transfers to the RPM 2005 Family Trust were permissible transfers under the terms of the Shareholder's Agreement.

55.     Fourth, in addition to the foregoing, the recourse that Bischoff is seeking (*i.e.*, the right to buy out, at book value, the shares owned by the RPM 2005 Family Trust) is wholly unavailable to him.

56.     Paragraph 4(a) of the Shareholder's Agreement requires that a shareholder who wishes to purchase any of the shares of a selling shareholder (whether

in a voluntary or involuntary transaction) must "accept" the shares offered for sale within 20 days of the "offer."

57.     Despite having received notice of the 2011, 2013 and 2016 Transfers, Bischoff never attempted to exercise – and thus waived and is estopped from asserting – his putative right to acquire all or a portion of the transferred shares.  In fact, Bischoff never possessed any such right in the first instance, as each transfer was valid and permissible under the terms of the Shareholder's Agreement.

58.     Bischoff first asserted his claim to the RPM 2005 Family Trust shares in his 2019 Notice of Arbitration, nearly eight years after the first transfer, six years after the second, and three years after the third.  Although he was aware of the 2011 transfer at or shortly after the time it occurred, Bischoff failed to object at that time.  Instead, he waited until long after Plaintiff made two additional (and larger) transfers to the RPM 2005 Family Trust to attempt to undo those transfers and seize not 0.05%, not 10.05%, but 15.05% of Boar's Head shares to which he was not entitled.

59.     Fifth, the relief that Bischoff seeks would effect a de facto forfeiture of an unconscionable magnitude that has long been disfavored and rejected by the law.

60.     Lastly, the inequity of Bischoff's efforts to effectively seize 15.05% of the company is perhaps most starkly highlighted by the fact that in 2012, Bischoff transferred Boar's Head shares to his two daughters despite the fact that neither daughter was actively employed in the business and were thus ineligible to receive them. Upon learning of this deliberate breach of the Shareholder's Agreement, the other shareholders, including Plaintiff and the RPM 2005 Family Trust, did not

demand that Bischoff tender those shares to them at book value, but instead allowed

him to rescind the transfers and retain his shares.  Yet Bischoff now seeks to force the

RPM 2005 Family Trust to relinquish its shares to him at nominal cost despite the fact

that the transfers were: (i) wholly proper; (ii) expressly permitted by the Shareholder's

Agreement; and (iii) known to him for years.

61.    In light of the foregoing, there is an actual and justiciable controversy

between Bischoff, Plaintiff and the RPM 2005 Family Trust as to whether the 2011,

2013 and 2016 Transfers to the RPM 2005 Family Trust were permissible transfers

under the terms of the Shareholder's Agreement and whether Bischoff has any legal or

equitable entitlement to those transferred shares.

62.    The antagonistic and adverse interests are before the Court by proper

process and the relief sought is not merely the rendition of legal advice by the courts

or the answer to questions propounded from curiosity.

63.    While the Notice of Arbitration was withdrawn, without prejudice, in

2020, pursuant to an agreement among the parties to, *inter alia*, toll the statute of

limitations, that tolling agreement has now expired, and Bischoff has not retracted,

and continues to advance, his threats of renewed litigation and his baseless challenge

to the share transfers to the RPM 2005 Family Trust. Moreover, Bischoff expressly

agreed that this declaratory judgment action could be filed upon expiration of the

tolling agreement.

64.    By filing the 2019 Notice of Arbitration and continuing to assert his ill-

founded claims, Bischoff has impaired Plaintiff's and RPM's ability to manage their

personal affairs by creating uncertainty as to Plaintiff's and RPM's rights, duties, status, and other equitable or legal relations with regard to the 2011, 2013 and 2016 Transfers to the RPM 2005 Family Trust of 15.05% of the equity of Boar' Head. Plaintiff, RPM and the trusts at issue are entitled to obtain a declaration that clarifies their rights, duties and status with respect to the shares at issue and put to rest any further claims by Bischoff with respect to those shares.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment:

(a)     Declaring that each of the 2011, 2013 and 2016 Transfers to the RPM 2005 Family Trust was a permissible transfer to an eligible transferee under the terms of the Shareholder's Agreement;

(b)     Declaring that Bischoff's challenge to the 2011 Transfer is barred by the applicable statute of limitations, and therefore that the 2013 and 2016 Transfers were proper and valid for this reason as well;

(c)     Declaring that Bischoff acquiesced to, waived, released and/or is estopped, by the doctrine of laches and otherwise, from asserting any right to challenge the transfers or seize for himself the shares at issue;

(d)     Declaring that Bischoff has no legal or equitable right or entitlement to any of the shares so transferred; and/or

(c)     Granting Plaintiff, RPM and the RPM 2005 Family Trust such other relief as the Court deems just and proper.

Date: May 1, 2021                    Respectfully submitted,

*/s/ William J. Schifino, Jr.*
William J. Schifino, Jr., Esq.
Florida Bar No. 564338
Daniel P. Dietrich, Esq.
Florida Bar No. 0934461
Justin P. Bennett, Esq.
Florida Bar No. 112833
**GUNSTER, YOAKLEY & STEWART, P.A.**
401 E. Jackson Street, Suite 1500
Tampa, Florida 33602
Telephone: (813) 228-9080
Facsimile: (813) 228-6739
Email: wschifino@gunster.com
Email: ddietrich@gunster.com
Email: jbennett@gunster.com

**GOLENBOCK EISEMAN ASSOR BELL & PEKSOE LLP**
Martin S. Hyman (Pro Hac Vice to be submitted)
Matthew C. Daly (Pro Hac Vice to be submitted)
711 Third Avenue, 17th Floor
New York, New York 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0330
Email: mhyman@golenbock.com
Email: mdaly@golenbock.com

*Attorneys for Plaintiff*

17