# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| ROBERT S. MARTIN, as a trustee of the (i) MARTIN 2008-A INVESTMENT TRUST, (ii) MARTIN 2013-A INVESTMENT TRUST, (iii) RPM 2005 FAMILY TRUST, and (iv) RSM 1988 TRUST,<br><br>             Plaintiff,<br><br>             v.<br><br>ERIC BISCHOFF,<br><br>             Defendant. | Case No.  8:21-cv-01045 |
| ERIC BISCHOFF,<br><br>             Counterclaim-Plaintiff,<br><br>             v.<br><br>ROBERT S. MARTIN, in his capacity as trustee of the (i) MARTIN 2008-A INVESTMENT TRUST, (ii) MARTIN 2013-A INVESTMENT TRUST, (iii) RPM 2005 FAMILY TRUST, and (iv) RSM 1988 TRUST,<br><br>            Counterclaim-Defendant. | **ERIC BISCHOFF'S ANSWER, COUNTERCLAIM AND THIRD-PARTY COMPLAINT** |

ERIC BISCHOFF,

     Third-Party Plaintiff,

      v.

ROBERT S. MARTIN, in his individual capacity; JOHN AND JANE DOES 1-3, as unknown trustees of the (i) MARTIN 2008-A INVESTMENT TRUST, (ii) MARTIN 2013-A INVESTMENT TRUST, and (iii) RSM 1988 TRUST; THE MARTIN 2008-A INVESTMENT TRUST; THE MARTIN 2013-A INVESTMENT TRUST; THE RPM 2005 FAMILY TRUST; and THE RSM 1988 TRUST,

     Third-Party Defendants.

## ANSWER

   Defendant, Counterclaim-Plaintiff, and Third-Party Plaintiff Eric Bischoff ("Bischoff"), by his undersigned counsel, answers the Complaint for Declaratory Judgment (the "Complaint") filed by Plaintiff and Counterclaim-Defendant Robert S. Martin, in his capacity as Trustee of the (i) Martin 2008-A Investment Trust,[1] (ii) Martin 2013-A Investment Trust, (iii) RPM 2005 Family Trust, and (iv) the RSM 1988 Trust,  ("Plaintiff" or, in the Answer, "RSM"), as follows:

---

[1]  Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Complaint.

## GENERAL DENIAL

Except as otherwise expressly stated herein, Bischoff denies each and every allegation in the Complaint, including, without limitation, (1) any allegations contained in introduction, headings, subheadings, unnumbered paragraphs and footnotes of the Complaint; (2) specifically denies that Bischoff caused Plaintiff any harm; (3) denies any liability to Plaintiff; and (4) denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations where they consist of excerpts from and/or references to third-party publications or statements.

Bischoff reserves the right to challenge the authenticity of all sources and documents referred to or purportedly quoted from in the Complaint, and to assert that any of the sources or documents referred to or purportedly quoted by Plaintiff in the Complaint are covered by the attorney-client privilege, the work product doctrine, and/or otherwise applicable privileges.  Further, in each case where Bischoff admits that Plaintiff accurately quoted a portion of a document, Bischoff does not thereby admit any allegation concerning the document's application, any characterization of the document or portion thereof, or that the selective quotation fairly represents the document as a whole, and respectively refers the Court to such document for a true and complete account of its contents.

Bischoff reserves the right to seek to amend or supplement his Answer as may be necessary or appropriate.

## RESPONSES TO SPECIFIC ALLEGATIONS[2]

1.     Admit the allegation contained in Paragraph 1 that Plaintiff styled this action as an action for declaratory judgment pursuant to 28 U.S.C. §2201. Otherwise denied.

2.     Admit Bischoff is an owner of Boar's Head Shares and is a party to the Shareholder's Agreement.  Otherwise denied.

3.     Admit that Bischoff is a shareholder of Boar's Head ("Shareholder"), and admit that between February 27, 2020, and April 30, 2021, Bischoff was employed by Frank Brunckhorst Co., LLC.  Otherwise denied.

4.     Bischoff lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4. Otherwise denied.

5.     Admit that Plaintiff and Bischoff are citizens of different states, and admit that the amount in controversy exceeds $75,000, excluding attorneys' fees, interest, and costs.  Otherwise denied.

---

[2]     Plaintiff included a purported description of this action under a heading titled "Nature of the Action."  It is not one of the enumerated paragraphs in the Complaint and, thus, no answer is required.  *See* FRCP 10(b).  However, for the avoidance of doubt, to the extent the allegations contained therein are not duplicative of Plaintiff's enumerated allegations (each of which Bischoff answers below), Bischoff denies the allegations contained in the "Nature of the Action" section of the Complaint.

6.    Paragraph 6 states a legal conclusion to which no response is required.  To the extent a response is required, admit the allegations contained in Paragraph 6.

7.    Paragraph 7 states a legal conclusion to which no response is required.  To the extent a response is required, admit the allegations contained in Paragraph 7.

8.    Deny the allegations contained in Paragraph 8 as an incomplete description of the Corporation's history and respectfully refer the Court to the Shareholder's Agreement for its contents.

9.    Admit that Paragraph 9 accurately quotes the Shareholder's Agreement and respectfully refer the Court to the Shareholder's Agreement for its full and complete contents.

10.    Admit that Paragraph 10 accurately quotes the Shareholder's Agreement and respectfully refer the Court to the Shareholder's Agreement for its full and complete contents.

11.    Admit that Paragraph 11 accurately quotes the Shareholder's Agreement and respectfully refer the Court to the Shareholder's Agreement for its full and complete contents.

12.     Admit that Paragraph 12 accurately quotes the Shareholder's Agreement and respectfully refer the Court to the Shareholder's Agreement for its full and complete contents.

13.     Admit the allegations contained in Paragraph 13.

14.     Admit the allegations contained in Paragraph 14.

15.     Deny the allegations contained in Paragraph 15 that Robert P. Martin ("RPM") is a beneficiary of the Alvina Martin 1988 Trust, deny knowledge sufficient to form a belief as to whether RPM is a beneficiary of the RPM 2005 Family Trust, and admit the remaining allegations.

16.     Deny allegations contained in Paragraph 16 as an incomplete recitation of Bischoff's allegations in the Notice of Arbitration and respectfully refer the Court to the Notice of Arbitration for its full and complete contents, except admit that Bischoff challenged three attempted dispositions of shares of Boar's Head stock ("Shares") to a trust for RPM's benefit that Plaintiff caused in 2011, 2013, and 2016 in violation of the Shareholder's Agreement (the "Attempted Dispositions"), and admit that the October 4, 2019 Notice of Arbitration constituted the first legal proceeding in which Bischoff challenged the Attempted Dispositions.

17.     Paragraph 17 contains a legal conclusion to which no response is required.  To the extent that a response is required, deny the allegations

contained in Paragraph 17, except admit that Bischoff objected to the three Attempted Dispositions and respectfully refer the Court to the Notice of Arbitration for its full and complete contents.

18.    Admit that a Group B Shareholder may transfer Boar's Head Shares to a beneficiary of the Alvina Martin 1988 Trust under the terms of the Trust Agreement creating such Trust and respectfully refer the Court to the Notice of Arbitration and the Shareholder's Agreement for their full and complete contents

19.    Deny the allegations contained in Paragraph 19 and respectfully refer the Court to the cited document for its full and complete contents, except avers that the Paragraph 3(a) of the Shareholder's Agreement gives Bischoff a contractual right to be afforded the right to purchase the Shares subject to the Attempted Dispositions and Paragraph 4(a) requires RSM offer to sell all his Shares to the Group B Shareholders.

20.    Deny the allegations contained in Paragraph 20.

21.    Deny the allegation in paragraph 21, except admit that the Notice of Arbitration was the first time Bischoff objected in a legal proceeding to the Attempted Dispositions.

22.    Deny the allegations contained in Paragraph 22.

23.    Deny the allegations contained in Paragraph 23, except admit that Bischoff's daughters were not employees of Boar's Head and that RSM and

other Boar's Head Shareholders entered into an agreement in 2013 whereby Bischoff retained certain Shares and respectfully refer to the cited document for its full and complete contents.

24.    Paragraph 24 incorporates by reference the allegations from paragraphs 1 through 23. Bischoff hereby incorporates all of his responses to paragraphs 1 through 23 herein.

25.    Paragraph 25 contains no factual allegations to which a response is required. To the extent a response is required, deny the allegations contained in Paragraph 25.

26.    Admit that Paragraph 26 accurately quotes the Shareholder's Agreement and respectfully refer the Court to the Shareholder's Agreement for its full and complete contents.

27.    Bischoff lacks knowledge and information sufficient to form a belief to the truth of the allegations contained in Paragraph 27.

28.    Bischoff lacks knowledge and information sufficient to form a belief to the truth of the allegations contained in Paragraph 28.

29.    Bischoff lacks knowledge and information sufficient to form a belief to the truth of the allegations contained in Paragraph 29.

30.    Admit the allegations contained in Paragraph 30.

31.    Deny knowledge and information sufficient to form a belief to the truth of the allegations contained in Paragraph 31.

32.    Deny knowledge and information sufficient to form a belief to the truth of the allegations contained in Paragraph 32.

33.    Paragraph 33 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 33.

24.    Paragraph 34 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 34.

35.    Paragraph 35 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 35.

36.    Paragraph 36 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 36.

37.    Paragraph 37 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 37.

38.    Paragraph 38 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 38.

39.    Paragraph 39 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 39.

40.    Paragraph 40 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 40 except admit that RPM is a descendant of Plaintiff's Trustee.

41.    Paragraph 41 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 41.

42.    Paragraph 42 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 42.

43.    Admit that Paragraph 43 accurately quotes the Shareholder's Agreement and respectfully refer the Court to the Shareholder's Agreement for its full and complete contents.

44.    Paragraph 44 contains a legal conclusion to which no response is required.  To the extent a response is required, deny the allegation as an incomplete recital of the law regarding the statute of limitations.

45.    Paragraph 45 contains a legal conclusion to which no response is required.  To the extent a response is required, deny the allegation as an incomplete recital of the law regarding accrual of the statute of limitations.

46.    Paragraph 46 contains legal conclusions to which no response is required.  To the extent a response is required, deny knowledge and information sufficient to form a belief as to the truth of the allegation contained in Paragraph 46 that the 2011 Transfer occurred on September 14, 2011, and deny the remaining allegations contained in Paragraph 46.

47.    Deny the allegations contained in Paragraph 47.

48.    Paragraph 48 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 48.

49.    Paragraph 49 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 49.

50.    Paragraph 50 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained

in Paragraph 50 except admit that Bischoff did not assert any claim or cause of action based on the 2011 Transfer until he served his Notice of Arbitration on October 9, 2019.

51.    Paragraph 51 contains legal conclusions to which no response is required.  To the extent a response is required, deny knowledge and information sufficient to form a belief as to the truth of the allegation contained in Paragraph 51 that the RPM 2005 Family Trust is a trust created for the benefit of RPM, and deny the remaining allegations contained in Paragraph 51.

52.    Paragraph 52 contains legal conclusions to which no response is required.  To the extent a response is required, respectfully refer the Court to the Shareholder's Agreement for its full and complete contents.

53.    Paragraph 53 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 53.

54.    Paragraph 54 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 54.

55.     Paragraph 55 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 55.

56.     Paragraph 56 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 56 as incomplete and respectfully refer the Court to the Shareholder's Agreement for a full and complete recital of Paragraph 4(a).

57.     Paragraph 57 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 57.

58.     Deny the allegations contained in Paragraph 58 except admit that Bischoff first asserted in a legal proceeding his claim to the RPM 2005 Family Trust Shares in the 2019 Notice of Arbitration.

59.     Paragraph 59 contains a legal conclusion to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 59.

60.     Paragraph 60 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 60, except admit that, in 2012, Bischoff made transfers of Boar's Head Shares — that he subsequently rescinded — to the Eric Bischoff 2012

Trust, for the benefit of his daughters and their issue; and other Boar's Head Shareholders did not demand that he tender those Shares to them at book value.

61.     Paragraph 61 contains legal conclusions to which no response is required.

62.     Paragraph 62 contains legal conclusions to which no response is required.

63.     Deny the allegations contained in Paragraph 63 that characterize Bischoff's challenges to Plaintiff's Boar's Head transfers as "baseless" and that aver Bischoff has "continue[d] to advance [] threats of renewed litigation," and admit the remaining allegations contained in Paragraph 63.

64.     Paragraph 64 contains legal conclusions to which no response is required.  To the extent a response is required, deny the allegations contained in Paragraph 64.

65.     Paragraph 65 contains legal conclusions to which no response is required.  To the extent a response is required, deny that Plaintiff is entitled to any relief, including the relief sought on Page 16 of the Complaint, Paragraphs (a), (b), (c), (d) and (c) [sic].

## <u>AFFIRMATIVE AND OTHER DEFENSES</u>

### First Affirmative Defense
### <u>(Failure to State a Claim)</u>

66.    Plaintiff fails to state a claim upon which relief may be granted.

### Second Affirmative Defense
### (Bischoff Has a Superior Right to the Shares)

67.    Plaintiff's action is without merit because Bischoff, as outlined

fully in his Counterclaim and Third-Party Complaint below, has a superior

right to the Shares.


\*   \*   \*   \*   \*

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Defendant, Counterclaim-Plaintiff and Third-Party Plaintiff Eric Bischoff ("Bischoff"), by his undersigned counsel, asserts (a) this Counterclaim against Plaintiff and Counterclaim-Defendant Robert S. Martin (referred to in this Counterclaim and Third-Party Complaint as "RSM"), in his capacity as Trustee of (i) the Martin 2008-A Investment Trust, (ii) the Martin 2013-A Investment Trust, (iii) the RSM 1988 Trust (the three trusts collectively, the "RSM Trusts"), and (iv) the RPM 2005 Family Trust (the "RPM Trust"), and (b) this Third-Party Complaint against RSM, in his individual capacity, John and Jane Does 1-3 (the "Doe Defendants"), as former co-trustees of the RSM Trusts, the RSM Trusts and the RPM Trust, and asserts as follows:

## PRELIMINARY STATEMENT

1.      Bischoff brings this action to enforce his ownership rights in Boar's Head Provisions Co., Inc. ("Boar's Head," the "Company," or the "Corporation"), the family-owned, nationally known, premier manufacturer of delicatessen products that has its roots in Brooklyn, New York, as set forth in the Boar's Head Shareholder's Agreement and Irrevocable Trust ("Shareholder's Agreement" or "Agreement"), a copy of which is attached as Exhibit A hereto.

2.      The Shareholder's Agreement restricts to whom a shareholder of Boar's Head ("Shareholder") may transfer shares of Boar's Head

stock ("Shares").  The restrictions are intended to ensure that each generation of the founders' family lines has the same rights and access to ownership and control of the Company, so long as they follow the terms and conditions of the Agreement.  There are two distinct family lines addressed in the Shareholder's Agreement, but this dispute concerns only one:  the Bischoff family line.

3.    This action arises from the attempt by RSM — a third generation family member — to override his obligations to other members of the third generation, *i.e.*, Bischoff, in favor of the next generation of his own family (a fourth generation family member).  By the express terms of the Shareholder's Agreement, fourth generation family members are not permissible recipients of Boar's Head stock.

4.    In violation of the Shareholder's Agreement, RSM (whether in his individual capacity or in his capacity as a trustee of the RSM Trusts), the Doe Defendants and/or the RSM Trusts attempted — on three separate occasions — to dispose of a total of 15.05% Shares of Boar's Head capital stock (the "Attempted Dispositions") from the RSM Trusts to the RPM Trust. Pursuant to the express terms of the Agreement, any such "attempted dispositions of Shares … shall be void" *as of the dates they were purportedly made*, and must now be offered for purchase to Bischoff and other Boar's Head Shareholders specified in the Agreement at book value.

17

5.      Notwithstanding that, RSM and the RSM Trusts refuse to acknowledge that the Agreement prohibited transfers to the RPM Trust and refuse to offer the Shares subject to the Attempted Dispositions to Bischoff and other Boar's Head Shareholders as required by the Agreement.

6.      Further, under the Agreement, once a Shareholder of Boar's Head desires to dispose of *any* Shares other than as permitted in Paragraph 3, he or she must first offer *all* his or her Shares to certain other existing Shareholders, in this case, Bischoff.  Despite their clear desire (and attempt) to dispose of Boar's Head Shares other than as permitted in Paragraph 3, RSM, the Doe Defendants, and/or the RSM Trusts failed to first offer all their Shares to Bischoff.

7.      Accordingly, Bischoff seeks (i) a determination that the purported transfers of the Shares by RSM, the Doe Defendants, and/or the RSM Trusts to the RPM Trust are void *ab initio* and (ii) an order requiring that RSM, the Doe Defendants, and the RSM Trusts immediately offer all their Shares to Bischoff, as required by the Agreement.

## PARTIES

8.    Counterclaim-Plaintiff/Third-Party Plaintiff Eric Bischoff is an individual residing at 40 Forest Road, North Haven, New York 11963. Bischoff is a party to the Shareholder's Agreement and an owner of Boar's Head Shares.

9.    Counterclaim-Defendant and Third-Party Defendant Robert S. Martin is a director of Boar's Head, a party to the Shareholder's Agreement, and a Trustee of the RSM Trusts and the RPM Trust.  RSM is an individual residing in Sarasota County, Florida.

10.    Upon information and belief, Third-Party Defendants John and Jane Does 1-3 were Co-Trustees of the RSM Trusts at the times of the Attempted Dispositions .  Upon information and belief, Third-Party Doe Defendants are individuals.  Their names and residences are unknown.

11.    The Third-Party Defendant RSM Trusts held the Shares at issue before the Attempted Dispositions.  Upon information and belief, RSM is a current trustee and the beneficiary of the RSM Trusts, and was a trustee of the RSM Trusts at the times of the Attempted Dispositions.  Accordingly, all allegations made against the RSM Trusts constitute allegations against the then-serving Co-Trustees of the RSM Trusts, who caused the RSM Trusts to make the Attempted Dispositions in violation of the Agreement.

19

12.     Upon information and belief, the Third-Party Defendant RPM Trust is the recipient of the Shares subject to the Attempted Dispositions. Robert P. Martin ("RPM"), is RSM's son and, upon information and belief, is either the primary or sole beneficiary of the RPM Trust.  RPM is not a party to the Shareholder's Agreement and is not a permissible transferee of Boar's Head Shares under the Agreement.

## RELEVANT NON-PARTIES

13.     Non-party Boar's Head is an S Corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 1819 Main Street, Suite 800, Sarasota, Florida 34236.

## JURISDICTION, VENUE AND GOVERNING LAW

14.     The Court has subject matter jurisdiction over this Counterclaim and Third-Party Complaint pursuant to 28 U.S.C. §1332 because Counterclaim-Plaintiff/Third-Party Plaintiff Bischoff is a domiciliary of New York, Counterclaim-Defendant and Third-Party Defendants are domiciled in Florida (or for the Doe Defendants, their domiciles are unknown), and the amount in controversy exceeds $75,000, excluding attorneys' fees and costs.

15.     The Court also has supplemental jurisdiction over this Counterclaim and Third Party Complaint pursuant to 28 U.S.C. §1367(a) because the Court has original jurisdiction over the action filed by

Counterclaim-Defendant, and because Counterclaim-Defendant's Complaint and

this Counterclaim and Third-Party Complaint are so related that they form part

of the same case or controversy under Article III of the U.S. Constitution.

16.    Venue is proper pursuant to 28 U.S.C. §1391 because

Counterclaim-Defendant RSM filed the Complaint in this district.

17.    The Shareholder's Agreement "shall be governed by,

construed and enforced in accordance with, the laws of the State of New York

without giving effect to conflict of law principles." (Shareholder's Agreement,

¶ 18.)

## STATEMENT OF FACTS

### A.    Background.

18.    In 1933, Frank Brunckhorst formed Boar's Head with his

wife, his son (Frank Brunckhorst, Jr.), his son-in-law (Bruno Bischoff), and

Theodore Weiler to manufacture meat products to be distributed under the

Boar's Head brand, whose trademark is the well-recognized logo that consists of

the head of a boar inside a circle or oval.

19.    Brother-in-laws Frank Brunckhorst Jr. and Bruno Bischoff

always had planned to keep Boar's Head owned co-equally (50/50) by their

respective families.  Mr. Weiler (who was the only non-family member of the

founders) was the Company's financial backer.  Because Mr. Weiler had no

children, Messrs. Brunckhorst, Bischoff and Weiler expected that Mr. Weiler's

Shares ultimately would revert to the Brunckhorsts and the Bischoffs.

20.    Mr. Weiler died childless in 1987 and his equity interests in

Boar's Head reverted to the Brunckhorst and Bischoff families as the parties

originally intended.

21.    In 1991, in furtherance of the founders' intent that Boar's

Head would be equally owned — and exclusively operated — by the Bischoff

and Brunckhorst families, the Boar's Head Shareholders entered into the

Shareholder's Agreement.

**B.    The Shareholder's Agreement.**

*The Parties to the Shareholder's Agreement*

22.    At the time the Shareholder's Agreement was executed,

Group A — the Brunckhorst line — had one Shareholder, and Group B — the

Bischoff line — had three Shareholders.  Barbara Brunckhorst, the daughter of

Frank Brunckhorst Jr., was the only Group A Shareholder.  The Group B

Shareholders included (i) the Alvina Martin 1988 Trust, a trust established for

the benefit of Bruno Bischoff's daughter Alvina Martin; (ii) Counterclaim-

Defendant and Third-Party Defendant RSM, who is Bruno Bischoff's grandson

and Alvina Martin's son; and (iii) Counterclaim-Plaintiff and Third-Party

Plaintiff Bischoff, who is Bruno Bischoff's grandson and Herbert Bischoff's

son.  Boar's Head and Specsal Realty Corp., a New York Corporation, also were original parties to the Agreement.

23.    Paragraph 3(b) of the Agreement provides that any transferee of Shares "shall take such Shares subject to, and shall be fully bound by, the terms of this Agreement as if such transferee were a party hereto as a Group A or Group B Shareholder."  Pursuant to that provision, the Doe Defendants and the RSM Trusts, which upon information and belief are for the sole benefit of RSM, subsequently became parties to the Shareholder's Agreement.

24.    As the instant dispute involves only Group B Shareholders who are the lineal descendants of Bruno Bischoff, a family tree showing the Bruno Bischoff's generational lines is set forth below:



*The Shareholder's Agreement's Transfer Restrictions*

25.    The Shareholder's Agreement states that the aforementioned original contracting parties (*i.e.*, the second and third generations of co-founder Bruno Bischoff) "desire to maintain ownership and control of the Corporation among themselves for the purpose of insuring continuity of management among themselves and to provide for the orderly disposition of the shares of capital stock of the Corporation … now owned or hereafter acquired by each of them upon the occurrence of certain events."  (Agreement at 2).

26.    Under the Shareholder's Agreement, Shares among Group B Shareholders may only be transferred in certain circumstances and pursuant to

specific contractual requirements.  The Agreement also imposes obligations on a Shareholder who attempts, or desires, to transfer Shares in contravention of the Agreement.

27.    Paragraph 3(a) of the Agreement provides:  "no Shareholder, either directly or indirectly, shall sell, assign, …, place in trust, or otherwise voluntarily or involuntarily dispose of any of the Shares now owned or hereafter acquired by said Shareholder, except as hereinafter provided."

28.    Paragraph 3(a) further provides that any prohibited transfers "shall be void and shall immediately give the Corporation and other Shareholders the option to purchase the Shares" at the price and terms required by the Agreement.

29.    Paragraph 4(a) of the Agreement provides: a "Shareholder desiring to dispose of any or all of his Shares…shall first offer to sell *all of the Shares owned by such Shareholder* to the other members of his Group" (emphasis added), which offer shall be at the price and terms provided by the Agreement.  At the time the Shareholder's Agreement was entered into, the other members of RSM's group were all members of the second and third generations of co-founder Bruno Bischoff.

### *Permissible Transfers of Boar's Head Shares*

30.     The Shareholder's Agreement provides three different

mechanisms to dispose of Boar's Head Shares.  A Shareholder can (1) transfer

their Shares to a permissible transferee; (2) offer their Shares to the other

Shareholders and to the Company pursuant to an elective waterfall distribution

mechanism; or (3) when a Shareholder or the beneficiary of a trust that is a

Shareholder dies, the deceased or their trust's Shares are, under the terms of

their governing Will or trust instrument, may be transferred to a permitted

transferee or offered to the other Shareholders and to the Company pursuant to

the same elective waterfall.

31.     The contractual mechanisms were carefully drafted to ensure

that the generational lines of each family were provided equal access and rights

to any Shares that another Shareholder transferred, sold, or attempted to dispose,

unless they failed to avail themselves of an option to acquire those Shares, with

permitted transfers limited to the second and third generations of the founders,

Bruno Bischoff and Frank Brunckhorst II.  This is not unusual in wealthy

families, such as the Boar's Head owners, who often seek to treat members of

same-level generations equally in connection with transfers of ownership

interests in family businesses (or other long-held family assets).

32.     Under Paragraph 3(b)(ii) of the Shareholders Agreement, Group B Shareholders (such as the RSM Trusts) "may at any time sell or otherwise transfer any or all of its or his Shares to any other Group B Shareholder, any other member of Alvina Martin's immediate family (including nieces and nephews but excluding Robert A. Martin) who is an Active Employee, a trust for the benefit of such Group B Shareholder or such permitted transferee, or to a beneficiary of the Alvina Martin 1988 Trust to whom Shares are permitted to be transferred under the terms of the Trust Agreement creating such Trust as in effect on the date hereof."  Use of the term "immediate family," which the parties explicitly extended to include nieces and nephew, supported the generational limits on transfers, insuring equal treatment amongst all the second and third generational members of the founders.  Paragraph 3(b)(ii) further provides that any such transferee of Shares "shall take such Shares subject to, and shall be fully bound by, the terms of this Agreement as if such transferee were a party hereto."

33.     In other words, to transfer Boar's Head stock pursuant to Paragraph 3 of the Agreement, a Group B Shareholder may only "sell or otherwise transfer" Shares to the following four categories of individuals and/or entities:

i.      another Group B Shareholder,

ii.     any other member of Alvina Martin's immediate family (including nieces and nephews, but not Robert A. Martin) who is an Active Employee,

iii.    a trust for the benefit of a Group B Shareholder or permitted transferee who is an Active Employee, and

iv.     a beneficiary of the Alvina Martin 1988 Trust to whom Shares are permitted to be transferred under the terms of the Trust Agreement creating such trust as in effect on the date hereof.

All of the above permitted transferees are members of the second and third generation of Bruno Bischoff, the co-founder of the Company.

34.     Paragraph 4 provides the parties to the Shareholder's Agreement with a second mechanism to dispose of Boar's Head stock other than as provided in Paragraph 3. Paragraph 4 creates an elective waterfall distribution mechanism pursuant to which a Shareholder must "first offer to sell all of the Shares owned by such Shareholder to the other members of his Group," *i.e.*, Group A or Group B, pursuant to the terms and conditions set forth in the Agreement before disposing any of their Shares. Each such Shareholder in the offering Shareholder's group then has 20 days to accept the Shares offered to them (and additional time to accept any Shares offered to, but not accepted by, other shareholders in the same group). (Agreement ¶ 4(a)). If no Shareholders in the group exercise their purchase option, then the Shares are deemed offered to the Company, which has an additional 20 days to exercise its

option.  (*Id*. ¶ 4(c)).  If the Company also fails to exercise its option within the specified time, the Shares are deemed offered to the Shareholders in the other group for a period of 10 days.  (*Id*. ¶ 4(d)).

35.    The third and final permissible way to dispose of Boar's Head stock pursuant to contract is set forth in Paragraph 5 of the Agreement. That provision is triggered upon the death of a Shareholder or the beneficiary of a trust that is a Shareholder.  In that circumstance, unless that Shareholder's Shares are expressly bequeathed to a permitted transferee pursuant to a Will or trust, the Shares of the deceased Shareholder or Shareholder-trust beneficiary are deemed offered in accordance with the elective waterfall distribution schedule set forth in Paragraph 4 of the Agreement.

## C.    **The Attempted Dispositions Were Made in Violation of the Shareholder's Agreement.**

36.    RSM, the Doe Defendants and/or the RSM Trusts purported to make the Attempted Dispositions, *i.e.*, three attempted transfers of Boar's Head stock in violation of the Shareholder's Agreement.

### *The Attempted Dispositions*

37.    The first purported transfer occurred in 2011.  Upon information and belief, in or around September 2011, RSM, and/or the Doe Defendants caused the Martin 2008-A Investment Trust to attempt to transfer

0.05% of Boar's Head Shares from the Martin 2008-A Investment Trust to the RPM Trust (the "2011 Transfer").

38.    The second purported transfer occurred in 2013.  Upon information and belief, in or around December 2013, RSM and/or the Doe Defendants caused the Martin 2008-A Investment Trust to attempt to transfer an additional 10% of Board's Head Shares from the Martin 2008-A Investment Trust to the RPM Trust (the "2013 Transfer").

39.    The third purported transfer occurred in 2016.  Upon information and belief, in or around April 2016, RSM and/or the Doe Defendants caused the Martin 2013-A Investment Trust and/or the RSM 1988 Trust to attempt to transfer an additional 5% of Boar's Head Shares from the Martin 2013-A Investment Trust and/or the RSM 1988 Trust to the RPM Trust (hereinafter, the "2016 Transfer").

*Neither RPM nor the RPM Trust are*
*Permissible Transferees of Boar's Head Shares*

40.    Upon information and belief, the RPM Trust is a trust established for the benefit of RPM.  Neither RPM nor the RPM Trust (to which, upon information and belief, RSM and/or the Doe Defendants caused the RSM Trusts to make the Attempted Dispositions), is a permissible transferee of Boar's Head stock under the Shareholder's Agreement.  Accordingly, under Paragraph 3(a) of the Agreement, the Attempted Dispositions made from the RSM Trusts

30

(all Group B Shareholders) are void *ab initio* and, once voided, must be offered to Bischoff at the price and terms set forth in the Agreement.

41.    The RPM Trust is not a permitted transferee because it does not fall within any of the four categories of permissible transferees specified in the Agreement.

42.    *First*, the RPM Trust is not a Group B Shareholder, and did not become a Group B Shareholder by virtue of the 2011 Transfer.

43.    The RPM Trust did not purport to be a Group B Shareholder, or otherwise own any Boar's Head stock, prior to the 2011 Transfer. Rather, RSM has taken the position that the RPM Trust became a Group B Shareholder by virtue of the 2011 Transfer. For the reasons set forth below, the 2011 Transfer was not permitted by the Shareholder's Agreement, and is thus, void *ab initio* pursuant to the terms of the Agreement. Indeed, at no point in 2011 or thereafter did the RPM Trust ever become a Group B Shareholder.

44.    *Second*, RPM is not a member of Alvina Martin's "immediate family." The Black's Law Dictionary defines "immediate family" as a "person's brother parents, spouse, children and siblings." (18c, Black's Law Dictionary, 11th ed. 2019.)

45.     As it relates to the transfer of Boar's Head Shares within Group B, the parties to the Shareholder's Agreement expressly expanded the term "immediate family" to include Alvina Martin's nephew and nieces.

46.     The reason that expansion was necessary was because Bruno Bischoff had two children, Herbert Bischoff and Alvina Martin.  However, by the time the Shareholder's Agreement was executed, Herbert Bischoff had died. Accordingly, by specifying that permitted transferees included "Alvina Martin's immediate family (including nieces and nephews … )," both Alvina Martin's and Herbert Martin's children and thus, all of Boar's Head co-founder Bruno Bischoff's grandchildren, are equally eligible to own Boar's Head Shares.

47.     Similarly, with regard to Group A Shareholders Barbara Brunckhorst had only one sibling, Anthony Brunckhorst, who too had passed. Thus, the Shareholder's Agreement expressly includes Barbara Brunckhorst's nieces and nephews in her "immediate family," similarly assuring that Boar's Head co-founder Frank Brunckhorst Jr.'s grandchildren would be equally eligible to own Boar's Head equity, making all the grandchildren of the two Boar's Head founders equally eligible to own Shares.

48.     Notably, the parties did not agree to expand the term "immediate family" to include Alvina Martin's or Barbara Brunckhorst's grandchildren, or any other family members in the fourth generation following

Boar's Head founding fathers, and for good reason. Such an expansion would have resulted in unequal treatment among the children of the co-founders. Extending immediate family to include the grandchildren of Bruno Bischoff would have allowed for the following inequitable result: Barbara Brunckhorst's and Alvina Martin's children would be able to transfer Shares to their children, while their siblings' (Anthony Brunckhorst's and Herbert Bischoff's) children would *not* be permitted to transfer Shares to their children. Accordingly, extending "immediate family" to include the grandchildren of the co-founders of Boar's Head, such as RPM, plainly would be inconsistent with the terms and intended structure of the Shareholder's Agreement.

49. RSM has taken the position that a non-binding provision included in Paragraph 15 of the Agreement solely to reflect the parties' expected "moral obligations" alters the legal definition of "immediate family" as set forth in Black's Law Dictionary and the intention of the contracting parties to ensure equity across the founders' generational lines. It does not.

50. Paragraph 15's non-binding provision merely memorializes the parties' intention (should they agree to do so) to provide extended family members of former Shareholders the opportunity to work for the Company — first on a trial basis, and then possibly as a permanent employee — and later, possibly, become eligible to purchase Boar's Head Shares.

33

51.    Paragraph 15 provides RPM, an extended family member of Alvina Martin and one of Bruno Bischoff's great-grandchildren, a *possible* way to be eligible to become a Shareholder.  Paragraph 15 would only come in to play for RPM in the event that RSM no longer owned Boar's Head Shares. Paragraph 15 never applied because RSM never ceased owning Boar's Head Shares.

52.    Further, Paragraph 15 confirms that, when entering the Shareholder's Agreement in 1991, the contracting parties knew that the Agreement did not provide for transfers to the founders' fourth generation family members, but wanted to express the extra non-contractual expectations they had of one another.

53.    Moreover, the fact that the drafters of the Shareholder's Agreement specified in Paragraph 15 the precise, non-binding mechanism by which Bruno Bischoff's fourth-generation family members (*i.e.*, his great-grandchildren, and Alvina Martin's grandchildren), *e.g.*, RPM, may become Shareholders, but did not similarly specify in Paragraph 3(b) that grandchildren were among the immediate family who were eligible to receive Shares, undermines the argument that the parties intended to expand the definition of "immediate family" as used in Paragraph 3(b) to include Alvina Martin's grandchildren.

54. *Third*, the RPM Trust is not a trust for the benefit of a Group B Shareholder or permitted transferee. As set forth in Paragraphs 39 through 40, the RPM Trust is a trust for the benefit of RPM, who is neither a Group B Shareholder nor a permitted transferee.

55. *Fourth*, neither RPM, nor the RPM Trust, is a beneficiary of the Alvina Martin 1988 Trust to whom Shares were permitted to be transferred under the terms of the Trust Agreement creating such trust as in effect on the date of the Agreement. The Alvina Martin 1988 Trust is a 12-year Grantor Retained Annuity Trust ("GRAT") trust. A GRAT is a trust in which the grantor (in this case, Alvina Martin) funds the trust with assets he or she owns, pays taxes on the trust assets, and receives annuity payments for a set period of time that total the value of assets he or she used to fund the trust, during which annuity period he or she (the grantor) is the sole beneficiary of the trust. At the conclusion of the GRAT period, the trust assets (often business interests) pass tax-free to the succeeding trust beneficiary(ies) (in this case, RSM).

56. Under the terms of the Alvina Martin 1988 Trust Agreement, if Alvina Martin survived the annuity period (which she did), the assets would pass to and for the benefit of RSM, if alive (which he was). However, had the Alvina Martin 1988 Trust terminated on her death (which it did not), the assets would pass to Alvina Martin's estate. RPM was not a beneficiary of the Alvina

Martin 1988 Trust as of the date of the Shareholder's Agreement (*i.e.*, 1991) —
the sole beneficiary at that time was Alvina Martin.  And, when the GRAT
terminated (upon information and belief, in 2000), RSM became the sole
beneficiary.  RPM was never a beneficiary of the Alvina Martin 1988 Trust.

**D.**     **RSM's and the RSM Trusts' Obligation to Offer All Shares to Bischoff.**

57.     Paragraph 3(a) of the Agreement provides that "[a]ny
attempted disposition of Shares, either voluntary, involuntary or by operation of
law, prohibited by this Agreement *shall be void* and shall immediately give the
Corporation and the Shareholders the option to purchase the Shares which were
the subject of the attempted disposition, such option to be on the terms set forth
in Paragraph 4 hereof, except that no written offers as provided therein be
given."  (Emphasis added.)

58.     Thus, when a Shareholder attempts to dispose of Boar's Head
Shares in a manner that is inconsistent with the mechanisms set forth in
Paragraphs 3(b), 4 or 5 of the Agreement, any such transfer is void *ab initio* and,
once voided, Shares purportedly transferred become subject to an option
purchase by the other Shareholders and the Company pursuant to Paragraph
3(a).  Accordingly, the Shares should be deemed by the Court void *ab initio* and
Bischoff should have the option to purchase the Shares.

59. Further, Paragraph 4 of the Agreement provides that "[a] Shareholder desiring to dispose of *any or all* of his Shares, other than as permitted in Section 3 hereof, shall first offer to sell *all* of the Shares owned by such Shareholder to the other members of his Group …" The Attempted Dispositions by RSM, the Doe Defendants, and/or the RSM Trusts demonstrate their desire to dispose of Shares they own, and so they were required — pursuant to Paragraph 4 of the Agreement — to first offer *all* Shares owned by them to the other Group B Shareholders, *i.e.*, Bischoff. Neither RSM, the Doe Defendants, nor the RSM Trusts, complied with that obligation. Accordingly, they should be required to immediately offer all of their Shares to Bischoff at book value.

60. The parties have agreed in the Shareholder's Agreement that "[i]n as much as the Shares are closely held and the market therefor is limited, irreparable damage would result if this Agreement is not specifically enforced." (Agreement, ¶ 11). Accordingly, as set forth in the Agreement, "the parties respective rights and obligations hereunder shall be enforceable…by a decree of specific performance." (*Id*.)

37

## FIRST CAUSE OF ACTION
### Breach of Contract

61.    Bischoff repeats and realleges the allegations contained in Paragraphs 1 through 60, as if fully set forth herein.

62.    The Shareholder's Agreement is a valid and enforceable contract under New York law.  Bischoff, RSM, the Doe Defendants and the RSM Trusts are all parties to the Agreement.

63.    Bischoff has materially complied with all relevant provisions of the Shareholder's Agreement.

64.    RSM, the Doe Defendants and/or the RSM Trusts breached the Agreement by making three Attempted Dispositions of Boar's Head Shares to the RPM Trust, a trust for the benefit of RPM.  The Attempted Dispositions occurred in 2011, 2013, and 2016.  Pursuant to the unambiguous terms of the Shareholder's Agreement, the Attempted Dispositions are void *ab initio* and Bischoff has the option to buy all the Shares.

65.    Further, RSM, the Doe Defendants, and the RSM Trusts were required to first offer *all* of their Boar's Head Shares to the other Group B Shareholders, *i.e.*, Bischoff, before attempting to dispose of *any* Shares other than as permitted in Section 3 of the Agreement.  Neither RSM, the Doe Defendants, nor the RSM Trusts complied with that contractual obligation.

66.     Bischoff has been damaged by RSM's, the Doe Defendants', and the RSM Trusts' multiple breaches of the Shareholder's Agreement and has no adequate remedy at law.  Indeed, the parties agreed in the Shareholder's Agreement that "[i]n as much as the Shares are closely held and the market therefor is limited, irreparable damage would result if this Agreement is not specifically enforced."  (Agreement, ¶ 11).

67.     Accordingly, upon entry of an order in this case, the Shares subject to the Attempted Dispositions should be deemed offered to Bischoff at book value and on the payment terms, as required by the Agreement, and RSM, the Doe Defendants, and the RSM Trusts should be ordered to offer all other Boar's Head Shares they own to Bischoff.

## SECOND CAUSE OF ACTION
### Declaratory Judgment

68.     Bischoff repeats and realleges the allegations contained in Paragraphs 1 through 67, as if fully set forth herein.

69.     The Court has the authority pursuant to 28 U.S.C. § 2201 to declare the rights and any other legal relations of any interested party seeking such declaration.

70.     There exists an actual controversy of sufficient immediacy and reality between the parties within the Court's jurisdiction.

71.     The Shareholder's Agreement is a valid and enforceable contract under New York law.

72.     Bischoff has materially complied with all relevant provisions of the Shareholder's Agreement.

73.     RSM, the Doe Defendants and/or the RSM Trusts made three Attempted Dispositions of Boar's Head Shares to the RPM Trust in 2011, 2013, and 2016.  RPM is the beneficiary of the RPM Trust.

74.     Neither RPM, nor the RPM Trust, are permissible transferees of Boar's Head stock under the Shareholder's Agreement.  Thus, the Attempted Dispositions to the RPM Trust are void *ab initio*.  The Agreement requires that (1) the Attempted Dispositions, once voided, must be deemed offered to Bischoff to purchase on the terms set forth in the Agreement (Paragraph 3 of the Agreement), *and* (2) that any other Shares owned by RSM, the Doe Defendants and/or the RSM Trusts be offered to Bischoff to purchase on the terms set forth in the Agreement (Paragraph 4 of the Agreement).

75.     RSM and the RSM Trusts (and upon information and belief, the Doe Defendants) refuse to comply with these contractual obligations, instead taking the position that the Attempted Dispositions were permissible under the Shareholder's Agreement.  In addition, the RPM Trust, at the direction of RSM

in his capacity as Trustee of the RPM Trust, has refused to sell the Shares subject to the Attempted Dispositions to Bischoff.

76.    Declaratory relief is necessary and appropriate to clarify and settle the rights and obligations the parties owe to one another under the Shareholder's Agreement.

77.    By reason of the foregoing, the Court should issue a declaratory judgment providing that: (i) neither RPM, nor the RPM Trust, is a permissible transferee of Boar's Head stock under Paragraph 3(b) of the Shareholder's Agreement, (ii) the Attempted Dispositions are void *ab initio*, (iii) Bischoff has the right to immediately acquire the Attempted Dispositions at book value and (iv) RSM, the Doe Defendants and the RSM Trusts must immediately offer to Bischoff for purchase at book value and on the payment terms provided in the Agreement any Boar's Head Shares they (or their successors and assigns) own, and the RPM Trust must immediately offer the Shares it purportedly owns to Bischoff at book value and on the payment terms provided in the Agreement.

**WHEREFORE**, Counterclaim-Plaintiff and Third-Party Plaintiff prays for judgment in its favor and against Counterclaim-Defendant and Third-Party Defendants as follows:

A.    A determination and /or declaratory judgment that (i) neither RPM, nor the RPM Trust, is a permissible transferee of Boar's

Head Shares under Paragraph 3(b) of the Shareholder's Agreement, (ii) the Attempted Dispositions are void *ab initio*, (iii) Bischoff has the right to immediately acquire the Shares subject to the Attempted Dispositions at book value, payable on the payment terms provided in the Agreement, and (iv) RSM, the Doe Defendants, and the RSM Trusts must immediately offer to Bischoff for purchase at book value, payable on the payment terms provided in the Agreement, any Boar's Head Shares they own, and the RPM Trust must immediately offer the Shares it purportedly owns to Bischoff at book value, payable on the payment terms provided in the Agreement.

B.   Entry of an order specifically enforcing or declaring (1) the Group B Shareholders' (*i.e.*, Bischoff's) right to purchase at book value the Shares subject to the Attempted Dispositions and (2) RSM's, the Doe Defendants' and the RSM Trusts' obligation to offer to Bischoff for purchase at book value, payable as provided in the Agreement, all Boar's Head Shares they own;

C.   Damages arising from RPM's and the RPM Trust's receipt of dividends, to the extent not prejudicial to either of them, and

D.   Such other and further relief as the Court may deem just and proper.

Dated:   June 1, 2021

By: */s/ Jaime Austrich*
SHUMAKER, LOOP & KENDRICK, LLP
Jaime Austrich
Florida Bar No. 84565
Brian W. Schaffnit
Florida Bar No. 582972
Bank of America Plaza, Suite 2800
101 E. Kennedy Blvd.
Tampa, FL  33602
(p) 813-227-2273
(f) 813.229-7600
jaustrich@shumaker.com
bschaffnit@shumaker.com

42

SCHULTE ROTH & ZABEL LLP
Michael E. Swartz *(pro hac vice application forthcoming)*
Taleah E. Jennings *(pro hac vice application forthcoming)*
*919 Third Avenue*
*New York, New York 10022*
*(p) 212-756-2000*
*(f) 212-593-5955*

*Attorneys for Defendant, Counter-claim Plaintiff and Third-Party Plaintiff, Eric Bischoff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 1st day of June, 2021, a true and correct copy of the foregoing was furnished via the Court's CM/ECF portal to the following:

William J. Schifino, Jr., Esq.
Florida Bar No. 564338
Daniel P. Dietrich, Esq.
Florida Bar No. 0934461
Justin P. Bennett, Esq.
Florida Bar No. 112833
GUNSTER, YOAKLEY & STEWART, P.A.
401 E. Jackson Street, Suite 1500
Tampa, Florida 33602
Telephone: (813) 228-9080
Facsimile: (813) 228-6739
Email: wschifino@gunster.com
Email: ddietrich@gunster.corn
Email: jbennett@gunster.com

GOLENBOCK EISEMAN ASSOR BELL
& PEKSOE LLP
Martin S. Hyman *(Pro Hac Vice to be submitted)*
Matthew C. Daly *(Pro Hac Vice to be submitted)*
711 Third Avenue, 17th Floor
New York, New York 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0330
Email: mhyman@golenbock.corn
Email: mdaly@golenbock.com


                              */s/ Jaime Austrich*
                                   Attorney


44