UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ROBERT S. MARTIN,**

      **Plaintiff, Counterclaim-
Defendant, and Third-Party
Defendant**

**v.**                                  **Case No: 8:21-cv-1045-MSS-AAS**

**ERIC BISCHOFF,**

      **Defendant, Counterclaim-Plaintiff,
and Third-Party Plaintiff**

_____

**ORDER**

**THIS CAUSE** comes before the Court for consideration of Plaintiff, Counter-Defendant and Third-Party Defendant's Motion for Summary Judgment, (Dkt. 47); Defendant, Counterclaim-Plaintiff, and Third-Party Plaintiff Eric Bischoff's Opposition to Motion for Summary Judgment, (Dkt. 56); Plaintiff's Reply in Support of Motion for Summary Judgment, (Dkt. 60); Defendant's Motion for Leave to File a Supplement to Defendant, Counterclaim, and Third-Party Plaintiff's Opposition to Motion for Summary Judgment, (Dkt. 70); and Plaintiff's Response in Opposition to Defendant's Motion for Leave to File a Supplement to Opposition to Motion for Summary Judgment. (Dkt. 74)

Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS IN PART AND DENIES AS MOOT IN PART**

Plaintiff, Counter-Defendant and Third-Party Defendant's Motion for Summary Judgment and **DENIES** Defendant's Motion for Leave to File a Supplement to Defendant, Counterclaim, and Third-Party Plaintiff's Opposition to Motion for Summary Judgment.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff, Counter-Defendant, and Third-Party Defendant Robert S. Martin ("RSM"), individually and as Trustee of the Martin 2018-A Investment Trust, the Martin 2013-A Investment Trust, the RSM 1988 Trust, and the RPM 2005 Family Trust ("RPM Trust"), and Defendant, Counter-Plaintiff, and Third-Party Plaintiff Eric Bischoff ("Eric") stipulated to the following material facts for the purposes of their summary judgment motions. (Dkt. 55)

Boar's Head Provisions Co., Inc. ("Boar's Head" or the "Company") is a family-owned business founded in 1933 by brothers-in-law Frank C. Brunckhorst ("Frank Jr.") and Bruno Bischoff ("Bruno"), as well as non-family member Theodore Weiler ("Weiler"). (Id. at ¶¶ 1–2) In 1961, Weiler owned 25 percent of the Company's equity, while the remaining 75 percent was owned equally by certain descendants of Frank Jr. and certain descendants of Bruno through F.B. Associates, a limited partnership. (Id. at ¶ 3) At that time, the eight partners in F.B. Associates were Frank Jr., Lilian Edith Brunckhorst, Frank T. Brunckhorst, Barbara Stravitz (nee Brunckhorst), Bruno, Bertha Bischoff, Alvina Martin (nee Bischoff), and Herbert Bischoff. (Id. at ¶ 4) By 1973, Frank Jr., Frank T. Brunckhorst, Bruno, Bertha Bischoff,

and Herbert Bischoff had passed away, and their ownership interests were consolidated by the living partners. (Id. at ¶ 5) In 1984, Weiler sold his 25 percent ownership interest back to Boar's Head. (Id. at ¶ 6) In 1985, the remaining three owners of Boar's Head entered into the Shareholder's Agreement and Irrevocable Proxy, dated October 29, 1985 (the "1985 Agreement") (Id. at ¶ 7) The 1985 Agreement separated the three Boar's Head owners into "Group A Shareholders" and "Group B Shareholders." (Id. at ¶ 8) In 1985, the Sole Group A Shareholder was Barbara Stravitz, and the Group B Shareholders were Alvina Martin and the 1985 L. Edith Brunckhorst Trust. (Id. at ¶¶ 9–10) RSM is Alvina Martin's son and the grandson of Bruno. (Id. at ¶ 11) Eric Bischoff is Herbert Bischoff's child, a grandchild of Bruno, and a nephew of Alvina Martin. (Id. at ¶ 12) In 1988, Eric Bischoff and RSM, first cousins, were "Active Employees" of Boar's Head, as defined in the 1985 Agreement. (Id. at ¶¶ 13–14) In 1991, Barbara Brunckhorst (who had changed her surname from Stravitz), the Alvina Martin 1988 Trust ("Alvina's Trust"), RSM, and Eric Bischoff entered into the 1991 Shareholder's Agreement and Irrevocable Trust (the "Shareholder's Agreement"), which remains operative to this day. (Id. at ¶ 15) Alvina's Trust was created by an April 1, 1988 trust agreement. (Id. at ¶ 16)

Robert P. Martin ("RPM") is RSM's son, Alvina Martin's grandson, and Bruno's great-grandson. (Id. at ¶ 17) The RPM Trust was created in 2005. (Id. at ¶ 18) Eric Bischoff disputes that the following three transfers of Boar's Head shares were valid under the Shareholder's Agreement:

- On September 14, 2011, the Martin 2008-A Investment Trust transferred a 0.05% (or 2.4 shares) in Boar's Head to the RPM Trust (the "2011 Transfer").

- On December 31, 2013, the Martin 2008-A Investment Trust transferred a 10% (or 480 shares) in Boar's Head to the RPM Trust (the "2013 Transfer").

- On April 7, 2016, the Martin 2014-A Investment Trust transferred a 5% interest (or 240 shares) in Boar's Head to the RPM Trust (the "2016 Transfer").

(Id. at ¶¶ 19–22) (collectively, the "Three Transfers")

In October 2019, Eric Bischoff served RSM with a demand for arbitration contesting the permissibility of the 2011, 2013, and 2016 transfers to the RPM Trust. (Id. at ¶ 23) After Eric Bischoff served his demand for arbitration on RSM, RSM commenced a prior declaratory judgment action in the United States District Court for the Middle District of Florida (Case No. 8:19-cv-02671-JSM-JSS). (Id. at ¶ 24) Pursuant to an Interim Settlement Agreement and Tolling Agreement, Eric Bischoff withdrew his demand for arbitration and RSM withdrew his prior declaratory judgment action without prejudice. (Id. at ¶ 25) Following the expiration of the Interim Settlement Agreement and Tolling Agreement, RSM filed this declaratory judgment action. (Id. at ¶ 26)

## B.     RSM's Complaint for Declaratory Judgment, (Dkt. 1)

On May 1, 2021, RSM filed his complaint for declaratory judgment, pursuant to 28 U.S.C. § 2201, concerning the "validity" of the 2011 Transfer, 2013 Transfer,

and the 2016 Transfers. (Dkt. 1 at 3, ¶ 1) Therein, RSM requested that the Court enter

judgment:

1. "[d]eclaring that each of the 2011, 2013 and 2016 Transfers to the RPM 2005 Family Trust was a permissible transfer to an eligible transferee under the terms of the Shareholder's Agreement;

2. [d]eclaring that [Eric] Bischoff's challenge to the 2011 Transfer is barred by the applicable statute of limitations, and therefore that the 2013 and 2016 Transfers were proper and valid for this reason as well;

3. [d]eclaring that [Eric] Bischoff acquiesced to, waived, released and /or is estopped, by the doctrine of laches and otherwise, from asserting any right to challenge the transfers or seize for himself the shares at issue;

4. [d]eclaring that [Eric] Bischoff has no legal right or equitable right or entitlement to any of the shares so transferred; and/or

5. [g]ranting Plaintiff, RPM and the RPM Family Trust such other relief as the Court deems just and proper."

(Id. at 16, Wherefore Clause)

## C.    Eric Bischoff's Answer, Counterclaim and Third-Party Complaint, (Dkt. 9)

Eric Bischoff, in response to RSM's declaratory complaint, filed a counterclaim

(the "Counterclaim") alleging two causes of action against RSM. (Dkt. 9) First, Eric

Bischoff asserted a breach of contract claim contending that RSM "breached the

[Shareholder's] Agreement by making three [Transfers] . . . [and that] [p]ursuant to

the unambiguous terms of the Shareholder's Agreement, the [Transfers] are void *ab*

*initio* and [Eric] Bischoff has the option to buy all the shares." (Id. at ¶ 64) Second, Eric

Bischoff asserted a declaratory judgment action seeking a "determination and/or

declaratory judgment that:

1. Neither RPM, nor the RPM Trust, is a permissible transferee of Boar's Head Shares under Paragraph 3(b) of the Shareholder's Agreement,

2. The [Transfers] are void *ab initio*,

3. [Eric] Bischoff has the right to immediately acquire the Shares subject to the [Transfers] at book value, payable on the payment terms provided in the [Shareholder's] Agreement, and

4. RSM, the Doe Defendants, and the RSM trusts must immediately offer to [Eric] Bischoff for purchase at book value, payable on the payment terms provided in the Agreement, any Boar's Head Shares they own, and the RPM Trust must immediately offer the Shares it purportedly owns to [Eric] Bischoff at book value, payable on the payment terms provided in the [Shareholder's] Agreement."

(Id. at ¶ 77)

### D.    RSM's Motion for Summary Judgment, (Dkt. 47)

RSM now moves the Court to enter summary judgment (i) declaring that Eric Bischoff is precluded from challenging the Three Transfers and declaring that the Three Transfers are valid and proper; and (ii) dismissing Eric Bischoff's Third-Party Complaint and Counterclaims in their entirety with prejudice. (Dkt. 47 at 35) First, RSM contends that Eric Bischoff is "unquestionably" time-barred from asserting his claims because Eric Bischoff's challenge to the 2011 transfer is barred by New York's six-year statute of limitations. (Id. at 4) The 2011 transfer, according to RSM, established RPM as a Group B Shareholder. (Id.) As such, the alleged bar on the 2011 transfer is "fatal to [Eric Bischoff's] challenge to the 2013 and 2016 transfer" because the Shareholder Agreement permits the free transfer of shares between one Group B Shareholder (*i.e.*, RSM)) and another Group B Shareholder (*i.e.*, RPM), as RSM did in 2013 and 2016. (Id.) Second, if Eric Bischoff is not time-barred, RSM contends the

Court should enter summary judgment in his favor because Bischoff was "required to exercise his alleged option to purchase the shares within 20 days of each transfer" under the plain language of Paragraph 4 of the Shareholder's Agreement. (Id.) Third, RSM argues that RPM was a permissible transferee of Boar's Head shares under the Shareholder's Agreement because: "(1) the Shareholder's Agreement permits RSM to transfer shares to a beneficiary of the Alvina Martin (RSM's mother's) 1988 Trust, which, in plain language, includes Alvina's grandchildren, including RPM, as beneficiaries; and (2) the Shareholder's Agreement permits RSM to transfer shares to a member of Alvina Martin's immediate family who is an 'Active Employee' of Boar's Head, which RPM has been since 2005." (Id. at 4–5) (quoting the Shareholder's Agreement)

### E.    Eric Bischoff's Response in Opposition, (Dkt. 57)

Eric Bischoff contends that the Court should not grant summary judgment in RSM's favor for several reasons. (Dkt. 57 at 2–4) First, Eric Bischoff argues that RPM is not a member of Alvina Martin's "immediate family", pursuant to Paragraph 3(b)(ii) of the Shareholder's Argument, because the "plain meaning" of immediate family does not include her grandchildren. (Id. at 2) Second, RSM cannot establish that the RPM trust "formed over a decade after Alvina's [grantor retained annuity trust, *i.e.* "GRAT"] terminated[ ] was ever a beneficiary of Alvina's GRAT." (Id.) Third, as for the statute of limitations argument, the 2011 transfer is the "only transfer impacted by the statute of limitations, if at all" while the 2013 and 2016 transfers are not. (Id. at 2–3) Additionally, the Shareholder's Agreement does "not confer Group B Shareholder

status on impermissible transferees" and, therefore, the RPM Trust did not become a Group B Shareholder following the 2011 transfer. (Id. at 2) Eric Bischoff asserts that, even if the statute of limitation applies, the limitation only bars his enforcement of the "contractual remedy to purchase the shares at issue (the 'Buy Out'), it does not place the propriety of the purported transfer beyond the Court's review." (Id. at 3) Consequently, he claims that he is not barred from challenging RSM's assertion that the 2011 transfer resulted in the RPM trust becoming a Group B Shareholder or RSM's claim that the 2013 and 2016 transfers can be justified as a transfer to an existing shareholder. (Id.) For the statute of limitation's bar on the contractual claim, Eric Bischoff contends that "New York law is clear that Eric[ ] [Bischoff's] declaratory relief [*i.e.*, a declaration that the 2011 transfer is void *ab initio*] is not time-barred, and, in any case, equity estops RSM from relying on the statute of limitations defense." (Id.) Finally, Eric Bischoff asserts that any alleged failure by him to exercise his Buy Out rights pursuant to the timing obligations of the purchase option mechanism in Paragraph 4 of the Shareholder's Agreement (the "Waterfall") does "not apply to prohibited transfers, such as those here, especially when they were done in secret, which precluded exercise of the Buy Out within the specified time period." (Id. at 3–4)

### F.    RSM's Reply in Support of Motion for Summary Judgment, (Dkt. 60)

RSM filed a reply in support of his motion for summary judgment on July 19, 2022. Therein, RSM reiterates that Eric Bischoff's declaratory judgment is time-barred

and observes that Eric Bischoff could not "cite a single case holding that a party can assert a claim *after* the statute of limitations expired merely because an underlying, private contract stated that an act in violation of the contract was void." (Dkt. 60 at 1–2) RSM explains that "the expiration of the statute of limitations with respect to the 2011 [T]ransfer precludes [Eric] Bischoff's status as a permissible transferee under the Shareholder's Agreement." (Id. at 3) RSM then asserts that RPM "became a Group B Shareholder by virtue of the 2011 [T]ransfer regardless of any belated challenge to the validity of that transfer." (Id. at 4) RSM argues that Eric Bischoff waived his equitable estoppel argument because he did not timely assert it in a pleading and has also failed to raise a genuine issue of material fact on any of the equitable estoppel elements. (Id. at 5) RSM contends that Eric Bischoff does not "dispute that he never exercised the alleged option, whether within 20 days of each transfer, as required, or even after he admits he was on actual notice of the [T]ransfers in (at the latest) July 2015." (Id. at 6) Finally, RSM asserts that the Shareholder's Agreement authorizes transfers to RPM because he is a member of his grandmother's "immediate family" as described in the Immediate Family Clause of the Shareholder's Agreement. (Id. at 10)

### G.    Motion for Leave to File a Supplement, (Dkt. 70)

Pursuant to Local Rule 3.01, Eric Bischoff requests that the Court grant his motion for leave to file a five-page supplement to Eric Bischoff's Opposition to RSM's Motion for Summary Judgment, (Dkt. 56), contending that "newly-discovered evidence strongly undermines RSM's claim that" Eric Bischoff was informed in late 2011 of the first Transfer because the Company's Chief Financial Officer, Steve

Kourelakos, "testified that he allegedly only disclosed information after being expressly permitted by Frank to do so." (Dkt. 70 at 4, ¶ 10) This evidence was obtained in another case pending in the Southern District of New York, which allegedly "revealed that Frank [Brunckhorst III] and others have worked to actively conceal ownership changes from Eric since as early as 2009, two years prior to the first transfer in 2011." (Id. at 2–3, ¶ 6)

## II.    STANDARD OF REVIEW

The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001) (explaining that "[s]ummary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law"). For a factual dispute between the parties to defeat summary judgment, the factual dispute must be "both genuine and material." Miccosukee Tribe of Indians of Fla. v. United States, 516 F.3d 1235, 1243 (11th Cir. 2008). A fact is material if it "affect[s] the outcome of the suit under the governing law," and is genuine "if a reasonable trier of fact could return judgment for the non-moving party." Id.

A court will "construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [the court will] credit the non[-]moving party's version." Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006) The role of the jury is to weigh the

evidence and determine credibility, "[t]herefore, if the determination of the case rests

on which competing version of the facts or events is true, the case should be submitted

to the trier of fact and the motion for summary judgment denied." Hodgetts v. City of

Venice, Fla., 794 F. Supp. 2d 1265, 1271 (M.D. Fla. 2011)

A moving party discharges its burden on a motion for summary judgment by

pointing out to the Court that there is an absence of evidence to support the non-

moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001)

(citation omitted). When a moving party has discharged its burden, the non-moving

party must then designate specific facts (by its own affidavits, depositions, answers to

interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial.

Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). The party

opposing a motion for summary judgment must rely on more than conclusory

statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d

984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts

have no probative value."). "If a party fails to properly support an assertion of fact or

fails to properly address another party's assertion of fact . . . the court may grant

summary judgment if the motion and supporting materials . . . show that the movant

is entitled to it." Fed. R. Civ. P. 56(e).

## III.    DISCUSSION

### A.    New York law applies

A federal district court sitting in diversity jurisdiction is required to apply the

conflict of laws of the forum state. Shaps v. Provident Life and Acc. Ins. Co., 317 F.3d

1326, 1329 (11th Cir. 2003). "Under Florida's conflict-of-law rules, the doctrine of *lex loci contractus* directs that, in the absence of contractual provisions specifying governing law, a contract [other than one for performance of services] is governed by law of the state in which the contract is made." Id. at 1329–30; see also Parm v. Nat'l Bank of California, N.A., No. 4:14-CV-0320-HLM, 2015 WL 11605748, at *12 (N.D. Ga. May 20, 2015), aff'd, 835 F.3d 1331 (11th Cir. 2016) (explaining that "[g]enerally, federal courts respect contractual governing law provisions"). Under Florida law, "courts will enforce choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1341 (11th Cir. 2005).

The Shareholder's Agreement contains a provision explicitly designating New York as the chosen forum. (See Dkt. 47-2, Shareholder Agreement at ¶ 18) Furthermore, the parties do not dispute that New York law governs the Agreement, and neither party asserts that New York law contravenes strong public policy. See Triaxx Prime CDO 2006-1, Ltd. v. Ocwen Loan Servicing, LLC, No. 9:17-CV-80203-CIV, 2017 WL 3701251, at *2 (S.D. Fla. Aug. 21, 2017), report and recommendation adopted, No. 9:17-CV-80203, 2017 WL 4415912 (S.D. Fla. Oct. 4, 2017). As such, the Court applies New York law to the following interpretation of the Shareholder's Agreement.

### B.    Eric Bischoff's challenge to the Transfers is barred by the Statute of Limitations

1.    Eric Bischoff's breach of contract counterclaim, as a theory to challenge the Transfers, is barred by the Statue of Limitations

a.    *Applicable law*

The statute of limitations for breach of contract claims in New York is six years. See N.Y. C.P.L.R. 213(2) (stating that "an action upon a contractual obligation or liability, express or implied" must be commenced within six years); see also Chase Sci. Rsch., Inc. v. NIA Grp., Inc., 749 N.E.2d 161, 163 (N.Y. 2001) (explaining that under New York law "[b]reach of contract actions are subject generally to a six-year statute of limitations"). New York courts do not apply the "discovery rule" to statues of limitations in contract actions. ACE Sec. Corp. v. DB Structured Prod., Inc., 36 N.E.3d 623, 628 (N.Y. 2015). Instead, a breach of contract action accrues when the alleged breach occurs. Ely-Cruikshank Co. v. Bank of Montreal, 615 N.E.2d 985, 986 (N.Y. 1993); Deutsche Bank Nat'l Tr. Co. Tr. for Harborview Mortg. Loan Tr. v. Flagstar Cap. Markets Corp., 112 N.E.3d 1219, 1222 (N.Y. 2018). New York has rejected the discovery rule because "to extend the highly exceptional discovery rule to general breach of contract actions would effectively eviscerate the Statute of Limitations in th[e] commercial dispute arena." ACE Sec. Corp., 36 N.E.3d at 628.

b.    *Eric Bischoff's Breach of Contract Claim*

As explained above, the Parties have stipulated that the challenged transfer occurred on September 14, 2011. That is the date that the Martin 2008-A Investment Trust transferred a 0.05% (or 2.4 shares) in Boar's Head to the RPM Trust. (Dkt. 55 at

¶ 19); (see also Dkt. 47, Ex. 6) (the "2011 Transfer Documents") Eric Bischoff disputes the validity of the 2011 transfer, as well as the 2013 and 2016 transfers. (Id. at ¶ 22) As such, the statute of limitations for a breach of contract claim concerning the 2011 Transfer began to run in 2011.

To evaluate whether RSM breached the Shareholder's Agreement by making the 2011 Transfer, the Court would need to interpret the Shareholder's Agreement to determine whether RSM made the 2011 Transfer in a way that did not comply with the Shareholder's Agreement and was thus prohibited by the Shareholder's Agreement. (See Shareholder's Agreement, ¶ 3(a)) As such, the Court finds that Eric Bischoff's assertion that the 2011 Transfer breached the Shareholder's Agreement is a contract claim subject to C.P.L.R. § 213(2)'s six-year statute of limitations. Eric Bischoff did not file the Notice of Arbitration challenging that transfer until 2019, or two years after the statute of limitations had expired.

Consequently, RSM's summary judgment motion as to Eric Bischoff's counterclaim for breach of contract for the 2011 Transfer is due to be **GRANTED**.

> 2.    Eric Bischoff's declaratory judgment counterclaim, as a theory to challenge the Transfers, is barred by the Statue of Limitations

> *a.    Applicable Law*

Likewise, Eric Bischoff's declaratory judgment counterclaim, as a theory to challenge the Transfers, is barred by the Statue of Limitations. "In order to determine therefore whether there is in fact a limitation prescribed by law for a particular declaratory judgment action it is necessary to examine the substance of that action to

identify the relationship out of which the claim arises and the relief sought[.]" Solnick v. Whalen, 401 N.E.2d 190, 193 (N.Y. 1980). "If that examination reveals that the rights of the parties sought to be stabilized in the action for declaratory relief are, or have been, open to resolution through a form of proceeding for which a specific limitation period is statutorily provided, then that period limits the time for commencement of the declaratory judgment action." Id. In determining what statute of limitations applies to a declaratory judgment, the "court must determine whether a party could have obtained complete relief through some other form of proceeding. If such other form of proceeding would be barred by the Statute of Limitations, then the action for a declaratory judgment is also barred[.]" Application of Morania Oil Tanker Corp. v. State Tax Comm'n, No. TSB-H-83(80.1)S, 1985 WL 193047, at *1 (N.Y. Sup. Ct. Dec. 15, 1983), aff'd sub nom. Morania Oil Tanker Corp. v. State Tax Comm'n, 103 A.D.2d 965, 479 N.Y.S.2d 810 (1984).

### a.    Eric Bischoff's Declaratory Judgment Action

The Court finds that Eric Bischoff's declaratory judgment action against the 2011 transfer is barred under New York law by the statute of limitations because the substance of it is a contract claim.

New York courts have generally held that when the "substance" of a declaratory judgment is for a "contract validation," the six-year statute of limitations for contract claims applies. Karedes v. Colella, 790 N.E.2d 257, 261 (N.Y. 2003). In Kohlback, the New York Supreme Court, applying Solnick, held that "the declaratory judgment which s[ought] to resolve the interpretation of a contract is an action governed by the

six year limitation period set forth in CPLR section 213(2)." Contour Const., LLC v.
Kohlbach, 22 Misc. 3d 1139(A), 880 N.Y.S.2d 871 (Sup. Ct. 2009); see also
Costantakos v. Bd. of Educ. of City of New York, 105 A.D.2d 825, 825, 482 N.Y.S.2d
27, 28 (holding that a "declaratory judgment action is generally governed by a six-year
Statute of limitations period").

Eric Bischoff seeks a declaratory judgment in which the Court would be
required to interpret the Shareholder's Agreement, specifically paragraph 3(b) of the
Shareholder's Agreement, to declare the Transfers violative of this paragraph and that
the Transfers are void *ab initio*.

Consequently, Eric Bischoff's declaratory action for the 2011 Transfer,
concerning violations of the Shareholder's Agreement, is barred by the six-year statute
of limitations. See Nusca v. Fodera, 129 A.D. 2d 568, 569 (2d Dep't April 6, 1987)
(citing Solnick v Whalen, 49 N.Y.2d 224) (affirming the trial court's order granting
summary judgment for the defendants because "the plaintiff's declaratory judgment
cause of action," in which he sought a declaration that he owned "25% of the issued
and outstanding shares of stock of the defendant," "arose from an alleged contract and
was therefore governed by the six-year Statute of Limitations," and finding that the
action was untimely because "the contract was . . . breached more than six years prior
to the commencement of this suit"); Aloi v. Board of Education, 81 A.D. 2d 874, 876
(2d Dep't 1981) (action for a declaratory judgment was governed by the six-year statute
of limitations set forth in N.Y. C.P.L.R. 213(2) because "the plaintiffs' underlying

claim is an action on the contract," *i.e.* for a breach of a collective bargaining agreement).

Next, Eric Bischoff contends that CPLR § 213(2) does not impact his requested declaration that the 2011 Transfer and "related transfer agreement" were *void ab initio* because the purpose of his claim "is to declare that no valid contractual obligation ever existed" in the first place. (Dkt. 56 at 23) (citing to 1650 Realty Assocs., LLC v. Golden Touch Mgmt., 2012 N.Y. Misc. LEXIS 6845 at *15 (N.Y. Sup. Ct. 2012)).

As a preliminary matter, the Court will not entertain any argument concerning the "related transfer agreement" for any of the Transfers because Eric Bischoff's declaratory action counterclaim does not reference any related transfer agreements, only the Shareholder's Agreement. A plaintiff may not "raise new claims at the summary judgment stage" in opposition to a motion for summary judgment. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314 (11th Cir. 2004) (per curiam) (explaining that the appellant could "not raise a contractual claim in her opposition to [respondent's] summary judgment motion"); see also Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006) ("Having proceeded through discovery without amending (or seeking to amend) his complaint to reflect that fundamental change, [plaintiff] was not entitled to raise it in the midst of summary judgment"). Eric Bischoff does not reference the transfer agreement in his Counterclaim. (See Dkt. 9) Instead, Eric Bischoff specifically references "Paragraph 3(b) of the Shareholder's Agreement" in his request that the Court declare the Transfers violative of Paragraph 3(b) and that the Transfers are void *ab initio*. (Id. at 41

–42) Similarly, Eric Bischoff did not seek leave to supplement his counterclaim to void the transfer agreement, and the Court finds that any claim to void the transfer agreement is not properly before this Court. Hence, Bischoff's belated reliance on <u>1650 Realty Assocs., LLC</u>, where the court explained that "[t]he six year statute of limitations of CPLR 213(2) does not apply to an action to declare a contract void at its inception," is untimely and unpreserved. 2012 N.Y. Misc. LEXIS 6845 at *15.[1]

More to the point, Eric Bischoff admitted in his contract counterclaim that the Shareholder's Agreement is "a valid and enforceable contract under New York law." (Dkt. 9 at ¶ 62) In his declaratory judgment count, Bischoff further asserted that "[t]he Shareholder's Agreement is a valid and enforceable contract under New York law." (<u>Id.</u> at ¶ 71) He contended that "[n]either RPM, nor the RPM Trust, are permissible transferees of Boar's Head stock under the Shareholder's Agreement[ ]" and that the Transfers are "void *ab initio*." (<u>Id.</u> at ¶ 74) By his very admission, Eric Bischoff concedes that the Shareholder's Agreement is a valid contract.

Therefore, the Court hereby **GRANTS** summary judgment in favor of RSM declaring that Eric Bischoff is barred by the Statute of Limitations from asserting his breach of contract and declaratory judgment claims challenging the 2011 Transfer.

---

[1] Even if the Court were inclined to entertain any argument regarding the validity of the 2011 Transfer, (which it is not) Bischoff provides no factual contention that the Transfer was "unconscionable." <u>See</u> <u>1650 Realty Assocs., LLC,</u> 2012 WL 12878252 at *5. Bischoff's principal argument is that the 2011 Transfer was void *ab initio* because it violated Paragraph 3(a) of the Shareholder's Agreement. That is simply an argument that the transfer should not be permitted because it constitutes a breach of the Shareholder's agreement.

Further, consistent with the Court finding that Eric Bischoff is time-barred from asserting any challenges to the 2011 Transfer, RSM's declaratory action relating to the validity of the 2011 Transfer is rendered **MOOT** and **DENIED** as such because the 2011 transfer is no longer subject to challenge.

        3.    <u>Eric Bischoff's equitable tolling argument concerning the 2011 Transfer fails</u>

        a.    <u>Applicable Law</u>

Statutes of limitations "reflect the legislative judgment that individuals should be protected from stale claims." <u>McCarthy v. Volkswagen of Am., Inc.</u>, 435 N.E.2d 1072, 1074 (1982). However, the doctrine of equitable estoppel "applies where it would be unjust to allow a defendant to assert a statute of limitations defense." <u>Zumpano v. Quinn</u>, 849 N.E.2d 926, 929 (2006). New York courts "have long had the power, both at law and equity, to bar the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's *affirmative wrongdoing* . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." <u>Id.</u> (emphasis added). As such, the doctrine of equitable estoppel will apply "where plaintiff was induced by fraud, misrepresentation or deception to refrain from filing a timely action." <u>Id.</u>; <u>see also</u> <u>Marshall v. Duryea</u>, 569 N.Y.S.2d 112, 113 ("It is the rule that a defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentation or deception to refrain from a timely action.").

In sum, under New York law, the doctrine of equitable estoppel "requires proof that the defendant made an actual misrepresentation or committed some other affirmative wrongdoing, that the plaintiff relied on the misrepresentation, and that the reliance caused him to delay bringing a timely action." Powers Mercantile Corp. v. Feinberg, 490 N.Y.S.2d 190, 193 (N.Y. App. Div. 1985), aff'd sub nom. Powers Mercantile Co. v. Feinberg, 67 N.Y.2d 981, 494 N.E.2d 106 (1986); see also Kaufman v. Cohen, 760 N.Y.S.2d 157, 167 (N.Y. App. Div. 2003) ("The doctrine [of equitable estoppel] requires proof that the defendant made an actual misrepresentation or, if a fiduciary, concealed facts which he was required to disclose, that the plaintiff relied on the misrepresentation and that the reliance caused plaintiff to delay bring [a] timely action.").

### b. Eric Bischoff's claim of equitable estoppel

As a preliminary matter, the Court finds that Eric Bischoff waived an equitable estoppel defense because he failed to assert this affirmative defense in his answer to the Complaint and cannot raise this defense for the first time in opposition to RSM's motion for summary judgment. In the Complaint, RSM asserted that "[u]nder New York's six-year statute of limitations, any challenge by [Eric] Bischoff to that transfer is time-barred after September 14, 2017." (Dkt. 1 at ¶ 49) RSM explained that Eric Bischoff "did not assert any claim or cause of action based on the 2011 Transfer until he served his Notice of Arbitration on October 9, 2019, more than two years after the limitations period had expired. Accordingly, his claim for breach of the Shareholder's Agreement arising from the 2011 Transfer . . . is time-barred[.]" (Id. at ¶ 50) In Eric

Bischoff's Answer to the Complaint, Eric Bischoff "admit[ted] that [he] did not assert any claim or cause of action based on the 2011 Transfer until he served his Notice of Arbitration on October 9, 2019." (Dkt 9 at ¶¶ 49–50) Notably, Eric Bischoff did not raise an equitable estoppel defense in response to paragraph 50 of RSM's Complaint, his Answer to RSM's complaint, or his Counterclaim. (See id.)

Accordingly, this Court finds that Eric Bischoff waived the equitable estoppel defense, and he cannot raise that defense for the first time in his opposition to RSM's motion for summary judgment. See Keybank National Association v. Hamrick, 576 Fed. Appx. 884, 888 (11th Cir. 2014)[2] ("When an affirmative defense initially was raised pursuant to a summary judgment motion, we determined that the defendant's 'failure to specifically plead the defense in its answer or amended answer results in the waiver of this defense.'") (first quoting Easterwood v. CSX Transp., Inc., 933 F.2d 1548, 1551 (11th Cir. 1991); and then citing Morgan Guar. Trust Co. of N.Y. v. Blum, 649 F.2d 342, 345 (5th Cir. Unit B July 2, 1981)).[3]

### C. Eric Bischoff's challenges to the 2013 and 2016 Transfers fail because the Transfers were valid under the Shareholder's Agreement

Relying on Paragraph 3(b) of the Shareholder's Agreement, RSM argues that the "time-bar on [Eric] Bischoff's challenge to the 2011 transfer is also fatal, as a matter of law, to his challenge to the 2013 and 2016 transfers[.]" (Dkt. 47 at 18) Paragraph

---

[2] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority.   See 11th Cir. R. 36-2."   United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000).

[3] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir.1981) (adopting as binding precedent all decisions of the former Fifth Circuit issued on or before September 30, 1981).

3(b) provides that, in relevant part, "a Group B Shareholder may *at any time* sell or otherwise transfer any or all of its or his shares to *any other* Group B Shareholder[.]" (Shareholder's Agreement at ¶ 3(b)) (emphasis added) The same paragraph states that the transferee of those shares "shall take such Shares subject to, and shall be fully bound by the terms of this Agreement *as if such transferee were a party hereto as a . . . Group B Shareholder*, as the case may be (based upon the Group of which the transferring shareholder was a member)[.]" (Id.) (emphasis added) As such, RSM contends that the 2011 transfer made RPM a Group B shareholder and "because [Eric] Bischoff is barred by the statute of limitations from challenging the 2011 transfer and RPM's status as a Group B shareholder, the 2013 and 2016 transfers were permissible under Paragraph 3(b) of the Shareholder's Agreement[.]" (Id.)

Eric Bischoff, for his part, asserts that the statute of limitations "has no bearing" on his challenges to the 2013 Transfer and 2016 Transfer. (Dkt. 56 at 21) He claims that RSM did not satisfy his burden to show that the 2011 Transfer made the RPM Trust a Group B Shareholder pursuant to the terms of the Shareholder's Agreement. (Id. at 22) Consequently, Eric Bischoff concludes that the "statute of limitations has no impact on [his] challenges to the 2013 and 2016 Purported Transfers, both of which were (indisputably) made within the limitations period." (Id.)

First, Eric Bischoff argues that "[u]nder New York law, 'holding shares' and being a 'Shareholder' under a shareholder's agreement are not synonymous[ ]" and, thus, an individual or entity "does not become a Group B Shareholder under the Shareholder's Agreement simply by holding shares." (Id. at 19) (citing to Kavanaugh

v. Kavanaugh, 200 A.D.3d 1568, 1573–74 (N.Y. App. Div. 2001). Relying on Kavanaugh, Bischoff contends that "where an agreement 'explicitly limits the defined term 'Shareholder,' certain individuals holding shares could be 'shareholders in the colloquial sense of the term, [but not] a 'Shareholder' under the agreement." (Id. at 19) (quoting Kavanaugh, 200 A.D.3d at 1573–74). In his Reply, RSM argues that Kavanaugh is "factually inapposite, as the agreement at issue there 'explicitly limited' the defined term 'Shareholder' to the eight children of one of the existing shareholders, while also providing that an individual could be a shareholder without falling within that defined term." (Dkt. 60 at 4)

The Court finds Kavanaugh not persuasive as to the issues of the Shareholder's Agreement because the Shareholder's Agreement does not "explicitly limit" the term shareholder to only certain individuals. Kavanaugh concerned a shareholder's agreement that "explicitly limit[ed] the defined term 'Shareholder'" to the eight children of one of the founders of the company at issue. 200 A.D.3d at 1573–74. The founder and his second wife transferred various quantities of shares to other parties. Id. at 1573. The court explained that the shareholder's agreement's transfer restrictions "appl[ied] only to transactions in which a 'Shareholder' [wa]s the transferor." Id. As such, the Court held that "while [the founder and his second wife] were both [company's] shareholders in the colloquial sense of the term, neither [of them] was a 'Shareholder' to whom the transfer restrictions of the [Shareholder's Agreement] applied." Id. at 1574.

Here, by contrast, the Shareholder's Agreement expressly contemplates other parties being shareholders, aside from the Group A and Group B Shareholders defined in the Shareholder's Agreement's preamble. (See Dkt. 47-2, Shareholders Agreement at 1) For example, Paragraph 4(i) states, in relevant part, that "a transferee [who receives shares pursuant to Paragraph 4(i)] takes such Shares pursuant to the terms of this Agreement and *as a member* of the Group of the transferring Shareholder[.]" (Id. at ¶ 4(i))

Second, Eric Bischoff contends that a New York trial court has previously examined the effect of Paragraph 3(a)'s language, that is "any attempted disposition of Shares . . . prohibited by this Agreement shall be void[,]" (Id. at ¶ 3(a)), and held that certain challenged transfers and their related transfer agreements were "legal nullities that can neither be breached nor enforced." (Dkt. 56 at 20) (quoting Genger v. Genger, 2015 WL 112831, at *11 (N.Y. Sup. Ct. Jan. 07, 2015)) Bischoff also relies on Hong Qin Jiang v. Li Wan Wu as an example in which a "shareholder's attempted sale of her shares did not comply with transfer restrictions and therefore, because the transfer was of no legal effect, [the court found that] the seller 'remained a shareholder.'" (Dkt. 56 at 21) (quoting Li Wan Wu, 179 A.D.3d 1035, 1038 (N.Y. App. Div. 2020)

The Court similarly finds Genger factually inapposite because, unlike Eric Bischoff, the shareholder challenging the allegedly void transfer had not waited until *after* the statute of limitations had expired to seek relief. In Genger, the shareholder seeking to enforce the shareholder's agreement provision filed suit in 2008 claiming

that a 2004 transfer was made "in violation" of the shareholder's agreement. <u>Genger</u>,
2015 WL 112831 at *2. <u>Genger</u> explained that another court had "held that the 2004
transfers were void because they violated the stockholder's agreement. Thus, the
transfer agreement effectuating the invalid 2004 transfers was also void or deemed
void, and void contracts are legal nullities that can neither be breached nor enforced."
<u>Id.</u> at *11. However, because the <u>Genger</u> suit was filed *within* the Statute of
Limitations, *i.e.* within six years, the Court finds that <u>Genger</u>'s reasoning does not
apply to the facts of this case where Eric Bischoff's claim on the 2011 transfer is time-
barred. The Court similarly finds that Eric Bischoff's reliance on <u>Li Wan Wu</u> is
factually inapposite because the statute of limitations had not expired in that case
either. <u>Li Wan Wu</u>, 179 A.D. 3d at 1036–1037 (describing defendants' challenge to
plaintiff's status as a shareholder in defendant's summary judgment motion, which
was ruled on in December 2016, relating to alleged share transfers that occurred in
2014).

As explained above, Eric Bischoff is barred from challenging the validity of the
2011 Transfer, and the Court is barred from making the specific finding that the 2011
Transfer was valid—only that Eric Bischoff's claims challenging the 2011 Transfer are
barred.

Eric Bischoff's challenges to the 2013 and 2016 Transfers are not time-barred
because he filed the 2019 Notice of Arbitration within New York's six-year statute of
limitations for contract claims. (<u>See</u> Dkt.1 at ¶ 50) Therefore, the Court is permitted to
consider the Shareholder's Agreement for those transfers. However, the Court finds

that his challenges to the 2013 and 2016 Transfers fail because RPM is now conclusively established as a Group B Shareholder at the time of the 2013 and 2016 Transfers.

As an initial matter, the 2011 Transfer Documents show that the shares were sold to the RPM 2005 Family Trust from the Martin 2008-A Investment Trust, a Group B Shareholder. (Dkt. 47-6) The 2011 Transfer Document states that the 2011 Transfer concerned "a fraction of 0.05% of the outstanding capital stock" in Boar's Head. (Id.) The 2011 Transfer Document provides that, in addition to the capital stock or interest in Boar's Head, the RPM 2005 Family Trust acquired "all rights of [the Martin 2008-A Investment Trust], together with all the rights of [the Martin 2008-A Investment Trust] in respect of such fractional interests as a shareholder of [Boar's Head][.]" (Id.) Therefore, at the time of the 2013 transfer – two years after the 2011 Transfer – the RPM 2005 Family Trust owned Boar's Head Shares as a Group B Shareholder.

The Shareholder's Agreement supports this conclusion. Paragraph 3(b) of the Shareholder's Agreement states that, "the transferee shall take such Shares subject to, and shall be fully bound by, the terms of this Agreement as if such transferee were a party hereto as a Group A or Group B Shareholder, as the case may be (based upon the Group of which the transferring Shareholder was a member)[.]" (Dkt. 47-2, Shareholder's Agreement at ¶ 3(b)); (see also id. at ¶ 4(i)) Thus, the RPM 2005 Family Trust in 2013, according to paragraph 3(b), was effectively an owner of those shares as a Group B Shareholder because the RPM 2005 Family Trust had acquired those

shares from a Group B Shareholder. Paragraph 3(b) further provides that "a Group B Shareholder may at any time sell or otherwise transfer any or all of its or his Shares to any other Group B Shareholder." (Id. at ¶ 3(b)). Consequently, the 2013 Transfer was authorized by the Shareholder's Agreement because it involved the transfer of shares between two Group B Shareholders – from the Martin 2008-A Investment Trust to the RPM 2005 Family Trust. (Dkt. 47-7)

Similarly, the 2016 Transfer was between the RPM 2005 Family Trust, a Group B Shareholder, and the Martin 2013-A Investment Trust, a Group B Shareholder. (Dkt. 47-8) Therefore, Paragraph 3(b) of the Shareholder's Agreement authorized the transfer of shares in 2016 between effectively two Group B Shareholders. As such, the Court finds that Paragraphs 3(b) and 4(i) of the Shareholder's Agreement permitted the 2013 and 2016 Transfers to RPM because he was effectively a Group B Shareholder when they were made. Therefore, the Court hereby **GRANTS** RSM's motion for summary judgment to the extent that the 2013 Transfer and 2016 Transfer were valid under the Shareholder's Agreement.

### D. Eric Bischoff's Motion for Leave to File a Supplement to his Response in Opposition for Summary Judgment IS DENIED.

The Court **DENIES** Eric Bischoff's Motion for Leave to File a Supplement because the allegedly newly discovered evidence does not preclude the Court's granting of summary judgment in RSM's favor. First, as the Court explained above, Eric Bischoff waived his equitable estoppel argument and cannot raise it for the first time in opposition to summary judgment. As such, any newly discovered evidence

relevant to Eric Bischoff's equitable estoppel argument is moot because this defense has been waived. Second, assuming *arguendo* that Eric Bischoff could raise the equitable estoppel argument, evidence of any affirmative wrongdoing that occurred before 2015 does not create a genuine issue of material fact precluding summary judgment. There is no genuine issue of material fact as to Eric Bischoff's knowledge of the 2011 Transfer in 2015. Consequently, Eric Bischoff has failed to create a genuine issue of material fact as to all of the elements of his equitable estoppel defense because he does not put forth any evidence for a reasonable juror to find that any misrepresentations or affirmative wrongdoing "caused him to delay bringing a timely action." Kaufman, 760 N.Y.S. 2d at 167 ("The doctrine [equitable estoppel] requires proof that the defendant made an actual misrepresentation or, if a fiduciary, concealed facts which he was required to disclose, that the plaintiff relied on the misrepresentation and that reliance caused plaintiff to delay bringing [a] timely action").

## IV.    CONCLUSION

Accordingly, it is hereby **ORDERED** that:

1. Plaintiff, Counter-Defendant and Third-Party Defendant's Motion for Summary Judgment, (Dkt. 47), is **GRANTED IN PART AND DENIED AS MOOT IN PART**.

2. Specifically, the Motion is **GRANTED** in that the Court finds that Eric Bischoff is precluded from challenging the 2011, 2013, and 2016 Transfers; that the 2013

and 2016 Transfers were valid and proper; and that Bischoff's Third-Party Complaint and Counterclaims are dismissed in their entirety with prejudice.

3. The Motion is **DENIED as MOOT** in that the Court finds RSM's separate request for declaratory relief concerning whether the 2011 Transfer was valid is moot in light of the finding that the 2011 Transfer stands because Eric Bischoff's challenge to it is time barred.

4. Defendant's Motion for Leave to File a Supplement to Defendant, Counterclaim, and Third-Party Plaintiff's Opposition to Motion for Summary Judgment, (Dkt. 70), is **DENIED**.

5. The **Clerk** is **DIRECTED** to terminate all pending motions and close this case.

**DONE** and **ORDERED** in Tampa, Florida, this 27th day of October 2023.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE


**Copies furnished to:**
Counsel of Record
Any Unrepresented Person